# KIDD v. TEEPLE.

A MORTGAGE of real estate does not, in this State, confer the right to the possession of the mortgaged property, except as the result of a foreclosure and sale.

By an instrument in; writing, a ditch company "granted, bargained, and sold" a water ditch "and also the entire proceeds derived from said ditch, from the sale of water, and also the proceeds from the sales of water" from another ditch, called the Virginia Ditch; and in the same connection the grantees were authorized "to collect, demand, and receive the rents, issues, and profits, and the entire proceeds" of said ditches, or sufficient thereof to meet the payments thereinafter mentioned.    Then followed the usual proviso in a mortgage, that if the several installments of a certain debt, due the grantees, were duly paid, the conveyance should be void—and a further clause, that in default of payment the grantees might sell the "premises before described with all the appurtenances" in the manner prescribed by law: *held*, that the instrument was, as to all the property mentioned in it, simply a mortgage, and that nothing in the provisions respecting the profits and proceeds of sales of water authorized the mortgagees to take possession of either ditch before a foreclosure and sale.

After a sale of mortgaged premises on execution against the mortgagor, and a delivery of the Sheriff's deed to the purchaser, the mortgagee can acquire no right of entry by a permission from the mortgagor who has remained in possession.

A judgment will not be reversed on account of error in admitting improper evidence upon a point immaterial to the decision.

When a judgment is correct by the record, it will be affirmed without reference to the grounds upon which it was rendered by the Court below.

The respondent may insist, in the appellate Court, upon a point properly presented, although it was not urged in a trial Court.

APPEAL from the Fourteenth Judicial District.

This was an action of ejectment, brought by G. W. Kidd against D. C. Teeple and others, to recover a water ditch, known as "Omega Water Ditch," in Nevada County. The complaint alleged title and right of possession in plaintiff, at and prior to May 29th, 1861, and an entry and ouster by defendants on that day. The answer admits the possession of the defendants, and, after a qualified denial of plaintiff's title, avers that in October, 1858, the Omega Water Ditch Company were the owners of the ditch described in the complaint, and at that time executed an instrument in writing to defendants under which they subsequently

received the possession from the Omega Water Ditch Company, and by the terms of which, they were entitled to take and to still retain the possession. The answer set forth the terms and provisions of this instrument substantially conforming to those of the mortgage described below. The plaintiff demurred to the new matter set up in the answer on the ground that the instrument described did not warrant defendants in taking or holding possession. The record does not show what disposition was made of this demurrer. The replication denied that the ditch mentioned in the mortgage instrument, described in the answer, was the same as that described in the complaint.

It appeared in proof, that defendants were in October, 1858, the owners of a ditch called the Diamond Creek Ditch, leading from Diamond Creek to Omega, and having the prior right to the waters of that creek; that the "Omega Water Ditch Company" were at the same time the owners of a ditch called the "Virginia Ditch," constructed in 1856 to bring to Omega the waters of the same creek, and also with a view to an extension beyond to the South Yuba River, of which the creek was a tributary; that at the date mentioned, the Omega Water Ditch Company purchased of defendants the Diamond Creek Ditch, and agreed to pay them $12,000 therefor in installments, and to secure the payment executed the instrument referred to in defendants' answer. This instrument commences in the usual form of a mortgage conveyance, and grants, bargains, and sells to the defendants "all and singular that certain water ditch and premises known as the Diamond Creek Water Ditch .... also the entire proceeds derived from said ditch, from the sale of water, and also the proceeds of the sale of water from the property or ditch heretofore known as the Virginia Ditch in the township, county, and State aforesaid, and the said party of the first part does hereby authorize the said parties of the second part or their assigns to collect, demand, and receive the rents, issues, and profits, and the entire proceeds of said ditch or ditches, arising or accruing from the sale of water flowing therein, or sufficient thereof to meet the several payments of money as hereinafter mentioned—to have and to hold the above mentioned and described premises to the said parties of the second part, their heirs," etc.

Then follows a proviso in the usual form, that upon payment of the several installments of the debt when due the conveyance shall be void, but that in case default be made, " then the said parties of the second part, their heirs, etc., are hereby authorized and empowered to sell the premises before described with all and singular the appurtenances in the manner and form prescribed by law."

The plaintiff acquired the title of the Omega Water Ditch Company by purchase at judicial sale, receiving the Sheriff's deed March 21st, 1860. In September, 1860, the Omega Company, having still retained possession, and having made default in their payments to defendants, delivered to them the possession of the ditches professedly in compliance with their agreement in the mortgage of October, 1858. After the making of this mortgage and before the purchase of plaintiff, the Omega Company completed the extension of the Virginia Ditch to the Yuba River, diverting into it the waters of that stream as well as those of Diamond Creek, and the whole ditch was then called the " Omega Water Ditch." The evidence on the trial was principally directed to the question of identity between the " Virginia Ditch," mentioned in the mortgage, and the " Omega Water Ditch," the plaintiff contending that the mortgage covered nothing more than the original ditch and the waters diverted by it from Diamond Creek. On this point, one Hawley, who had been employed by defendants as an attorney to draw the mortgage, was permitted to testify as to declarations made at the time by defendants, going to show their understanding, that the mortgage only embraced the ditch then completed, defendants objecting both on the ground that the declarations were privileged, and also that they were inadmissible to explain the writing. The record does not show that the Court below considered or passed upon the question of the right of defendants to the possession of whatever premises were covered by the mortgage. That Court having found as a fact, that the " Omega Water Ditch" sued for was not embraced in the description in the mortgage, gave judgment for the plaintiff, and the defendants have appealed.

*Tod Robinson*, for Appellants.

I.   The communications to Hawley were privileged, being made

to him in the character of attorney. (*Turquand* v. *Knight*, 2 M. & W. 101; 1 Phil. Ev., 3d Ed. 163; 1 Greenl. Ev. Secs. 240, 241; *Comstock* v. *Heathcate*, 2 Br. & B. 4; *Rex* v. *Duke of Beddington*, 8 Duval Ry. 726; *Parker* v. *Carter*, 4. Manf. 273; 5 Cal. 450.)

II. The evidence given by Hawley was, in effect, proof of declaration of intentions of a party to a deed for the purpose of idenitfying the property described in it. Such evidence is not admissible. (2 Phil. Ev. Ch. 7, Secs. 1, 2.)

*McConnel & Garber*, for Respondents.

The testimony of Hawley was immaterial, because, admitting the identity of the ditch in controversy with the Virginia Ditch, we are still entitled to recover, for the reason that the appellants show no right to the possession under the mortgage.

The mortgage does not include the "Virginia Ditch." The Diamond Creek Ditch alone is mortgaged, to secure the money due upon its purchase. The same words of grant, which are applied to the Diamond Creek Ditch are there applied to its rents, issues, and profits, and to the rents, issues, and profits of the Virginia Ditch.

The difference between the mortgage of the ditch, and that of the proceeds, rents, etc., consists in the power to " collect, demand, and receive " the latter, whereas there is no power to enter upon the former and take possession, or use it.

By the terms of this power or authority, the mortgagees are doubtless entitled to possession of the rents, issues, and proceeds; but of neither of the ditches, and especially not of the Virginia Ditch. The error of appellants, consists in confounding the rents, issues, and profits, with the ditches themselves. The parties themselves committed no such error, else why authorize the mortgagees to collect, demand, and receive the rents? etc. These are the words of the common power to collect debts. A party cannot collect, demand, or receive from himself, nor can rent or profits be due from a man to himself.

Had the parties intended to give possession, they would have given a power of entry, and expressly provided that possession

should pass. All this unseemly and unmeaning jargon about demanding and collecting rents, issues, and profits, would have been omitted, and they would have made a Welch mortgage of it at once.

The parties, by giving a power of entry, and by express covenant, could have transferred the possession; but there is no such power or covenant here. Hence, the right to the possession can only follow as an incident to some other right. But possession, when it is incident, and not independent, can only be incident to an estate, and the question at once arises, to what estate in the Virginia Ditch is the alleged right of possession incident?

A mortgage in this State is only a security; it passes no estate whatever, and gives neither *jus ad rem*, nor *jus in re*. In adopting this view of a mortgage, our Courts and Legislature have merely adopted the more refined and rational notions of the operation of redeemable securities for a long time prevalent in Courts of Law and Equity. (See *Eaton* v. *Jacques*, Douglass, 445, note 1; *Rew* v. *Bulkeley*, Id. 292; Coate on Mortgages, 175; Practice Act, Sec. 260.)

The property mortgage consists of two parts: 1st, The Diamond Creek Ditch; 2d, The rents, issues, etc., of the Diamond Creek Ditch, and also of the Virginia Ditch.

It will be readily admitted, that the mortgage of the Diamond Creek Ditch does not pass an estate in it. But if a mortgage of the ditch itself carries no estate, how can it be said that a mortgage of the rents and profits accruing from it, can pass an estate? It is true that, as we have already shown, the rents and profits are legally different from the ditch itself; but still, they are incidents to it; they flow out of it, and cannot exist independent of it. The title to them may be, and often is, separate and independent of the title to the principal thing, but they themselves must always exist as incidents.

It is an universal principle, that the grant of an incident cannot pass the principal, and at all events, that it cannot pass a larger estate than a grant of the principal itself. But the mortgage of the Diamond Creek Ditch passed no estate in the ditch itself, *a fortiori*, the mortgage of the rents, etc., passed no estate in the ditch.

If this reasoning be sound when applied to the Diamond Creek

Ditch, it is still more conclusive when applied to the Virginia Ditch. The Virginia Ditch is not at all affected by the mortgage. The Diamond Creek Ditch is in terms pledged for the payment of the money; but the parties seem, by omitting all mention of the Virginia Ditch, to have, ex industria, excluded the idea that the latter was subject to the charge.

Rent is a "compensation or return yielded periodically to a certain person out of the profits of corporeal hereditaments by the tenant in possession." (2 Black. Com., Sec. 41; 2 Kent's Com., Sec. 469; 2 Stephens' Com. 23.)

So the term "issues" is more frequently used to denote something due from a party in possession to a party out of possession, than otherwise.

All the terms used, in fact, are such as clearly indicate an intention that the mortgagees were merely to receive the rents, etc., of the property from the persons in possession, whoever they might be. Nor is there anything anomalous in the position, that one party should have a right to the possession, and another, to the rents and profits. It is the common case of landlord and tenant. Our own law presents an example precisely in point.

*Appellant*, in reply.

The respondent has raised a question in this Court which was not presented in the Court below, and which cannot or should not be presented here. This is an Appellate Court, and its duty is confined to the review of the action of inferior tribunals, and the correcting their erroneous decisions on matters which had before been presented to them.

From an examination of the answer and replication, it is apparent that the only matters of inquiry were, whether the ditch property in dispute was embraced in appellant's mortgage, and whether they entered into the possession of such property in pursuance of the mortgage? It is obvious, too, from the opinion of the Judge below, that no other matter was called to his attention, and that the judgment was rendered for respondent wholly upon the ground that the property described in the mortgage was not the same described in the complaint.

Kidd *v.* Temple.

The point now relied on was, as appears from the transcript, raised by a demurrer on the part of the respondent. But as nothing appears to have been done with the demurrer, it is presumed to have been waived.

As a demurrer was the only proper way to raise this question upon the facts set forth in the answer, and as the respondent either abandoned it, or did not raise it in a practical form, according to the rules of proceedings in a Court of Justice, it is confidently apprehended that the point, deemed of no importance in the preparation of the case, or on the trial, or which it was supposed or understood could not be sustained by the facts, cannot now be resorted to before this tribunal to sustain the judgment of the Court below upon the only points and issues which were submitted on the trial.

II. If, as it is admitted, the conveyance of the entire rents, issues, and profits forever of an estate, is the conveyance of the estate in fee, why would not a conveyance of the rents, issues, and profits, for the payment of a debt until the debt was paid, be a mortgage of the estate? If, then, this was a mortgage of the ditch, and the possession was given by the mortgage, the defendants cannot be trespassers as to mortgagor, or those who claim under him.

Unless this is a mortgage on the ditch with a right of the possession thereof, it is no mortgage of anything whatever, and no security for a debt in any form. To enable the mortgagor to have a lien or mortgage on the rents, issues, and profits, it is necessary he should have· possession of the thing from which the rents, issues, and profits proceed. Otherwise, the rents, issues, etc., must go into the hands of the mortgagor, and consequently to his personal responsibility alone can the mortgagee look.

The mortgage becomes no security whatever. To deny that the appellants intended to obtain some other than the personal security of their debtor, is to deny the record.

NORTON, J. delivered the opinion of the Court—COPE, C. J. and CROCKER, J. concurring.

By operation of Sec. 260 of the Civil Practice Act, and it may be said also of some other sections of that act, and certain sections

of the act concerning conveyances (Secs. 1, 24, 36–40) and of several decisions of this Court (*McMillan* v. *Richards*, 9 Cal. 365 ; *Johnson* v. *Sherman*, 15 Id. 287 ; *Fogarty* v. *Sawyer*, 17 Id. 589), a mortgage of real estate does not in this State confer the right to the possession of the mortgaged property, except as the result of a foreclosure and sale. The defendants' mortgage has not been foreclosed. The mortgage has no special provision authorizing possession to be taken, whatever might be the effect of such a special provision. It is in the usual form. It conveys the property, but provides that if certain payments are made, then the instrument is to be void ; but if default be made in their payment, then the property may be sold. These provisions apply to the proceeds of the sale of water of the Virginia Ditch, as well as to the body and proceeds of the sale of water of the Diamond Ditch. Until default and a consequent foreclosure and sale, the defendants had no right to enter upon, or take possession of the premises, and having done so, they are liable to be ejected the same as any other intruder.

By the findings of the Court below it appears that the defendants took possession of the mortgaged premises by permission of the mortgagor, the Omega Ditch Company. But this was in the month of September, 1860, and by the same findings it appears that the plaintiff received the Sheriff's deed, which constituted his title, on the twenty-first day of March, 1860. Therefore, at the time the Omega Ditch Company gave the permission to take possession, the title to the property and the right to the possession was not in them, but in the plaintiff in this action. Hence, permission given by them at that time, conferred no right of entry upon the defendants.

Under these circumstances, if there was error in admitting the testimony of the witness Hawley, which is the main objection urged by the appellants, it was immaterial.

The objection that the respondents can only rely upon the point of the want of identity between the Omega Ditch and the Virginia Ditch, because that is the ground upon which the Court below based its conclusion of law, is not tenable. It does not appear that the conclusion of law was based alone upon that finding. The Court speaks of it as "one of the main questions in the case."

Besides, however clear it might appear that the Court below considered that a controlling fact, yet if the respondents can show, or if this Court perceives, that on the findings the decree was correct, the judgment must be affirmed.

None of the errors assigned affect the findings which, as we have above specified, establish the plaintiff's right to recover in this action.

The judgment is therefore affirmed.