## STANLEY et al. v. McELRATH.*

### No. 12,187; November 27, 1889.

#### 22 Pac. 673.

**Judicial Notice—Judgments.—Code of Civil Procedure,** section 1875, subdivision 3, providing that courts may take judicial notice of "public and private official acts of the . . . . judicial department of this state," does not authorize a court to dispense with formal proof of its judgment in another cause.

**Bills and Notes.—In an Action Against the Maker of a Note** for the amount paid thereon by the indorser, it is no defense that the indorser paid it without proper demand and notice; for, as these are for the benefit of the indorser, he may waive any defects therein.

**Bills and Notes.—The Execution by an Indorser of His Own Note,** which is given and accepted in full payment of the note on which he is liable as indorser, constitutes a novation under Civil Code, section 1530, providing that "novation is the substitution of a new obligation for an existing one," and is made (section 1531) "by the substitution of a new obligation between the same parties with intent to extinguish the old obligation"; and the maker of the first note becomes liable to the indorser, though the holder, instead of canceling it, indorsed it without recourse to the indorser.

APPEAL from Superior Court, City and County of San Francisco.

*For subsequent opinion in bank, see 86 Cal. 449, 25 Pac. 16.

Wm. H. Fifield for appellant; Henry N. Clement for respondents.

GIBSON, C.—This action was brought by C. M. Hitchcock, who has since died, to recover from the defendant the sum of $6,136.50, with interest, on account of the payment, for and on behalf of the defendant, of a certain promissory note made by him on February 11, 1879, for $4,500, with interest, payable to the order of Hitchcock, at the London & San Francisco Bank, Limited, on April 11, 1879, and which note he (Hitchcock) indorsed solely for the accommodation of defendant, who thereupon negotiated it to the said bank, and received the full amount of note in money for his own benefit, and then at maturity let it go to protest for nonpayment. Subsequently, when the statute of limitations had about run against the note, Hitchcock paid it by giving his own note to, and which was received by, the bank in full satisfaction and payment of the protested note, which was by the bank indorsed without recourse, and surrendered to Hitchcock. Defendant, by his answer, admitted the making, indorsement, and negotiation of the note, but denied that Hitchcock was an accommodation indorser thereon to any greater extent than $3,631.28, and averred that the remaining $868.72, at the time the note was negotiated, was due from him to the defendant on account of a certain note, theretofore made by Hitchcock in favor of defendant, and by the latter negotiated to the above-named bank, and afterward by him paid to the bank. He also denied that the note was protested; that notice thereof was given to plaintiff; and that Hitchcock paid the note; and claimed the said sum of $868.72 as an offset, and the further sum of $4,000 for services rendered as an attorney to Hitchcock, by way of counterclaim.

The complaint is sufficient to sustain an action by plaintiff, either for money paid out to the use of defendant, or upon the note as an equitable assignee thereof. The trial resulted in a denial of the offset and counterclaim of defendant, and a judgment against him for the full amount of plaintiff's demand. The appeal is from this judgment, and an order denying a new trial.

The appellant urges as the principal reasons why his appeal should be sustained—First, that there is no evidence to sup-

port the findings in which his offset and counterclaim are disallowed; second, that his note was not legally protested, and hence Hitchcock could not be held as an indorser and had no right to pay the note, but, having paid it, he acted as a volunteer and could not recover of the appellant—the maker of the note; third, that Hitchcock's note, given to and accepted by the bank in payment of appellant's note, did not and could not constitute such a payment as entitled Hitchcock to recover therefor.

(a) The court found that it was not true that Hitchcock was an accommodation indorser only to the extent of $3,631.28 of the amount of the note, but that he indorsed the note wholly for the accommodation of appellant; and, further, that the offset and counterclaim could not be allowed, because they had formed the basis of separate actions prosecuted by the appellant, as plaintiff, against Hitchcock in the same court in which the action was tried, and which had been fully adjudicated. Respondents concede that there is no evidence in the record to show such adjudication, but in support of the findings argue that, as the claims were adjudicated in the same court, under section 1875 of the Code of Civil Procedure, which permits the courts of this state to take judicial cognizance of certain matters without formal proof, the trial court properly dispensed with formal proof of its own records showing the adjudications, and took judicial notice of them for the basis of its findings. The method suggested would be an easy one for supplying proof of a judgment, and, if it could prevail, would place all judgments in the same court beyond the reach of inquiry as to their reliability, since what a court can judicially notice in a case cannot be overcome by evidence. The scope of the above code provision was evidently misapprehended, for while the court could take judicial notice of (subdivision 3) "public and private official acts of the legislative, executive, and judicial departments of this state and of the United States," it could not dispense with proof of such judicial acts as might be in judgments. For example, we know judicially that the superior court, from whence this appeal came, is divided into twelve departments, and that a judge presides in each, but we cannot know without out competent proof what the judicial acts of the several judges may be. Thus said this court in People v. De La

Guerra, 24 Cal. 73: "In the trial of one case the court can no more take judicial notice of the record in another case in the same court without its formal introduction in evidence than if it were a record in another court; much less can this court take notice of the existence of a record not introduced in evidence in the court below." To the same effect is Lake Merced Water Co. v. Cowles, 31 Cal. 215. This error alone, if it does not affect the merits of the case, will not warrant a reversal, because it is a well-settled rule that a judgment which is sustained by the record will not be reversed because one of the reasons upon which it is based is erroneous: Kidd v. Teeple, 22 Cal. 255; Webster v. King, 33 Cal. 348; Helm v. Dumars, 3 Cal. 455. As the appellant did not, at the trial, adduce any evidence in support of his affirmative defenses, he therefore failed to establish them; and the court properly found against them, although for an erroneous reason. It is therefore obvious that, as the findings were justified, the reason is immaterial, and did not affect the merits of the case.

(b) A promissory note may be protested in this state: McFarland v. Pico, 8 Cal. 626; Kellogg v. Box Factory, 57 Cal. 327. And when protested, the protest is prima facie evidence of the demand, nonpayment and notice to any or all of the parties to the note: Pol. Code, sec. 795. "But," said this court in Kellogg v. Box Factory, "it is not necessary, in order to fix the liability of indorsers, that a note should be protested for nonpayment. A presentation of it to the maker upon the day of its maturity for payment, a refusal by him to pay it, and notice to the indorsers of such presentation and refusal, are sufficient."

The present case, however, illustrates the convenience of a protest, at least to banking institutions. The note was payable at the London & San Francisco Bank, Limited, which was at the same time the holder of the note. Now, to avoid making a demand upon itself, and a refusal of payment for lack of funds in its hands belonging to the maker of the note, it called in a notary for its convenience, whom it constituted its agent to make the necessary demand of payment at the bank, and who was authorized to place the dishonor of the note in a form that would constitute prima facie evidence thereof. The convenience of a notary in this respect was recognized by Story, J., as long ago as 1822, in Nicholls

v. Webb, 8 Wheat. 326, 5 L. Ed. 628. Hitchcock, as indorser, was entitled to notice of the dishonor of the note, but as it was for the benefit of himself and the holder, and not for that of the maker, he could waive it, if he saw fit to do so: Civ. Code, sec. 3135, subd. 1; 2 Daniel, Neg. Inst., sec. 1090. In Curtis v. Sprague, 51 Cal. 239, which was an action upon a note against the maker and an indorser, who was treated as a guarantor, the latter having promised to pay the note after maturity, and with full knowledge that the holder had failed to make a demand of payment, and give notice of nonpayment, the court said: "It is well settled that a promise by an indorser or guarantor, after maturity, to pay the note, with notice of the laches, dispenses with the necessity of proving demand and notice." This rule is almost universal where-ever the law-merchant prevails: Daniel, Neg. Inst., sec. 114; Story, Prom. Notes, sec. 274. So, if a notice may be completely waived by an indorser, or entirely dispensed with by his promise to pay after maturity, it is plain that he may determine whether he will treat a notice that may be imperfect as sufficient or not. Hence, as Hitchcock brought into court at the trial one of the duplicate notices of dishonor, made out and sent to him at two different places by the notary, it is evident that he at some time received the one he produced. Whether he received it in time was for him, not the maker to determine. That he (Hitchcock) considered that the notice was in time, and effectual, may be inferred from the fact that he never questioned it; but with a knowledge of its defects, if any existed, at all times afterward admitted his liability upon the note, and subsequently, and just before the statute of limitations had fully run against it, paid it. If no demand and notice had been given, and the indorser voluntarily paid the note at any time before it became barred, how could the maker be injured? He is the one that is primarily liable, and it matters not whether he is compelled to pay to the holder in the first place, or to his accommodation indorser, after the latter has paid the holder of the note, in the next place.

The plaint of the maker of the note in this case, that notice of dishonor was not given to his accommodation indorser, does not come with as good grace as it might from an indorser whom the indorsee was seeking to hold in an action upon the

note, wherein it would be incumbent upon the plaintiff to prove a proper demand and nonpayment and notice in order to hold him. Here the indorser admitted..the receipt of notice and the demand, the latter being undisputed, and acted upon them, besides, in paying the note, as he had a right to do at any time before it was barred. Besides, it seems the appellant at one time was satisfied with the manner in which the notice of dishonor was given, and the consequent liability of Hitchcock, as he, several times after the dishonor of the note, promised both the bank and Hitchcock that he would pay it, and did make several small payments to the bank on account of interest. Therefore the findings in this respect are fully sustained by the evidence.

(c) "Novation is the substitution of a new obligation for an existing one" (Civ. Code, sec. 1530); and it is made "by the substitution of a new obligation between the same parties, with intent to extinguish the old obligation": Id., sec. 1531. This is in accordance with the Roman·law upon this subject; and, says Judge Story in his work on Promissory Notes, section 105: "It shows that common sense, in its application to the every-day transactions of human life, speaks the same·language, and is regulated by the same motives of convenience and policy and justice, in all civilized countries, however wide their distance or remote their ages from each other. Thus we are told in the Institutes that the ancient lawyers at Rome held that a novation—the substitution of a new debt for an old one, thereby extinguishing the former— (Evans, Poth. Obl., marg. p. 546; Dig. Lib. 46, tit. 2, c. 1) arose when a second contract was intended to dissolve a former." And again, in section 438: "A negotiable promissory note will, by our law, operate as an extinguishment of a prior existing debt if it is so intended between the parties. The only question is as to the proof of such intention." Applying this doctrine in this case, the testimony of Hitchcock, the indorser of the note, and that of Scrivener, the managing agent of the bank that held the note, indisputably shows that the note of Hitchcock was given and received in absolute extinguishment of the latter's liability as indorser upon the appellant's note. Hence, as between Hitchcock and the bank, the appellant's note was fully paid, and a novation was thereby perfected between Hitchcock and the bank.

It makes no difference to the appellant, that we can perceive, that the bank, instead of canceling the note, indorsed it without recourse to Hitchcock, because between him and the maker he, as an accommodation indorser, stood toward the bank as a surety for the maker. Therefore the appellant, as principal debtor, was bound to reimburse his surety for his disbursements in satisfaction of the note, including necessary costs and expenses: Civ. Code, sec. 2847. See Waldrip v. Black, 74 Cal. 409, 16 Pac. 226, and Fowler v. Strickland, 107 Mass. 552. In the first case Waldrip signed a note as surety for and with the two defendants, they having executed a mortgage on realty to secure him against possible loss. He was compelled to pay the note to the holder, who, upon such payment, indorsed the note to Waldrip. The latter, to obtain reimbursement, brought suit upon the note against the makers, and to foreclose the mortgage. Held that, having paid the note, he became the equitable assignee thereof, and was entitled to enforce it as the holder thereof, as well as to foreclose the mortgage as collateral security.

In Fowler v. Strickland, which was similar to the present case, the note for $2,000 sued on was an accommodation note, made by the defendants to the plaintiff, as payee, who indorsed it for the accommodation of the defendants. They, defendants, thereupon negotiated it to one Loomis for the full amount of the note, and the plaintiff, as such indorser, thereby became liable for such amount in an action on the note by Loomis or other lawful holder. At the maturity of the note one of the defendant makers of the note informed the plaintiff that they would be unable to meet the note, and the plaintiff would be obliged to pay it. Soon after, the plaintiff took up the note by giving Loomis, the holder, in payment three promissory notes, signed by himself and another person, aggregating $700, and nothing further. The court, by Gray, J., held that "the plaintiff had the same right as any other person to purchase the note from Loomis for such price as might be agreed on between them. Even if, by the terms of such an agreement, Loomis had retained any interest in the proceeds of the note which he delivered to the plaintiff, the latter, in an action against the defendants on the note, could have recovered the full amount thereof, although he might have held a part of the proceeds in trust for Loomis. If he

purchased the entire interest of Loomis in the note at the time of its delivery by Loomis to him, he might recover the whole amount to his own use. The defendants, having received the whole amount of the note at the time of its original negotiation, and being now no longer liable to any action by Loomis, the amount of their liability in this action against them as makers of the note is not affected by the question of how much the plaintiff paid to Loomis, or whether the sum recovered will belong to Loomis or to the plaintiff.'' Of what concern, then, is it to the appellant here whether Hitchcock's note is ever paid or not? It ought to be sufficient for him to know that it relieved him of his responsibility to the bank upon his own note, of which he received the fruit. At one time, as we have seen, he was satisfied of the liability of his indorser upon the notice of dishonor, which he now strenuously seeks to avoid on this appeal.

Our conclusion is that, whether we regard the action as one upon the note by an equitable assignee, or one for money paid to the use of the defendant, the liability of the appellant in either case is manifest from the evidence; and, as there is no prejudicial error in the record, the judgment and order ought to be affirmed.

We concur: Belcher, C. C.; Hayne, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.