ARTHUR TREDWAY v. JOHN F. ANTISDEL.

*Bills and notes—Action by surety—Evidence—Payment—Protest—*
*Joint maker—Leading questions.*

1. A judgment should not be reversed for allowing leading questions regarding matters not material to plaintiff's case, and which work no injury to the defendant.

2. In a suit upon a promissory note the defendant gave no notice of set-off, and on the trial his counsel stated to the court that he wished to show that the plaintiff had sent his check to the defendant for the difference between the amount due on the note and his indebtedness to the defendant, which proposed testimony is held properly rejected, the statement failing to show either payment or settlement, for which purpose it was alone admissible.

3. In a suit by an indorser to recover from the maker the amount which he had been obliged to pay on a note, the defendant sought to introduce in evidence the testimony of the plaintiff taken in another suit, in which he testified to mortgaging his property to raise money to pay the note in question, which he deposited to the credit of the firm of which he and the defendant were members, and immediately gave the firm check to pay the note; the claim being that the testimony tended to show that the note was paid from partnership funds. No other testimony was offered in support of such contention. And it is held that the court would not have been justified in admitting the testimony, and permitting the jury to find from it that the note was so paid.

4. An indorser of a promissory note before its delivery to the payee is an original promisor, and liable without protest. *Rothschild v. Grix*, 31 Mich. 150; *Wetherwax v. Paine*, 2 Id. 555.

5. A payor is liable to an indorser who pays the note, whether legally protested or not. *McClatchie v. Durham*, 44 Mich. 435.

Error to Bay. (Cobb, J.) Argued January 23, 1891. Decided May 15, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*A. C. Maxwell,* for appellant, contended:

1. The note was never protested so as to charge plaintiff as an indorser, and his pretended payment was a voluntary interference with the business of another, and he cannot recover the money so paid from defendant; citing Story, Prom. Notes, § 453; *Ex parte Wackerbath,* 5 Ves. 574; *Thornton v. Wynn,* 12 Wheat. 183.

*Hoyt Post,* for plaintiff.

GRANT, J. This suit was commenced December 11, 1888, by filing a declaration upon the common counts. Attached to the declaration was a notice that plaintiff would give in evidence a certain promissory note, a copy of which is as follows:

"5,000. BAY CITY, MICH., June 1, 1887.

"One year from date I promise to pay to the order of Mrs. Julia Pickering five thousand dollars, value received, at Sec. Nat. Bank, with interest at 7 per cent., semi-annually.

"J. F. ANTISDEL."

Defendant demanded a bill of particulars. The bill of particulars furnished was as follows:

"To amount paid by plaintiff June 13, 1888, for principal, interest, and protest fees, to take up the note of defendant, of which copy is annexed to the declaration in this case, and upon which plaintiff was liable as an indorser_____ $5,188 80

"Interest on said $5,188.80 from June 13, 1888.

> "To amount of plaintiff's note to J. M. Buckley,
> given January 5, 1887, at defendant's request,
> to take the place of and release defendant's
> mortgage to said Buckley for that amount,
> which arrangement was practically in effect,
> then and there, an advance by plaintiff to
> defendant of said amount to release said prop-
> erty, and on said note defendant has paid
> interest to January 5, 1888.  Said note bore in-
> terest at seven per cent. per annum, and was
> payable one year after date_____   2,289 58
> "Interest at seven per cent. on said $2,289.58
> from January 5, 1888.

> Total _____ $7,478 38
> "Add the interest as above specified."

Defendant pleaded the general issue, the plea being
filed January 12, 1889.  Accompanying the plea was an
affidavit of merits to prevent an inquest.

The case was tried before a jury, May 7, 1890.  Plaint-
iff was the only witness sworn in the case, and defendant
offered no testimony except by way of cross-examination
of plaintiff.  At the close of the testimony the court
instructed a verdict for plaintiff.  The errors assigned,
and the facts connected therewith necessary for a deter-
mination of the questions involved, will be considered
separately.

1. Plaintiff, on direct examination, testified that he
gave the note for $2,289 at the request of the defendant,
to enable him, the defendant, to take up a second mort-
gage on the house and lot on Jefferson avenue, so as to
enable him, defendant, to give another first mortgage
upon them for $5,500, and that he had paid the note.
Plaintiff was asked by his attorney the following question:

"And this house and lot upon which the mortgage
existed was the personal property of Mr. Antisdel?"

Objection was made to this question as leading.  Objec-
tion overruled, and exception taken.  The error was

harmless. The inquiry was not material to the maintenance of plaintiff's case. Judgment should not be reversed by appellate court for allowing leading questions under such circumstances which work no prejudice to the party.

2. Defendant insists that he was prevented by the ruling of the court from showing that the Buckley note had been paid by applying it on the debt due from Tredway to the defendant of $3,000, and that Tredway had paid the balance of $700 by check to defendant; and, if this be so, the court committed an error which may properly be termed inexcusable. The circuit judge certainly knew that payment would be a complete defense. The following is what occurred upon the trial, and upon which the alleged error is based. Question by defendant's counsel:

"*Q.* About the month of June, 1888, some efforts were made to settle that note, wasn't there; some efforts were made by you to settle that $2,200 note?

"*A.* I don't know. I have no recollection of the dates.

"*Q.* Didn't you figure up the balance due on that note, and make to Mr. Antisdel and deliver or send to him a check for some $700, which, with that note, paid up the indebtedness from you to Antisdel?"

Plaintiff's counsel objected to this as immaterial and incompetent. The court sustained the objection, and defendant excepted. The cross-examination then continued:

"*Q.* Tell us what there was about the settlement of the amount due by that check."

Plaintiff's counsel entered the same objection as before. The court said:

"It strikes me as being so. The mere sending of a

check does not amount to a discharge if the check is returned."

Defendant's counsel then said:

"I wish to show that Mr. Antisdel and Mr. Tredway met; that they had some discussion about this $2,200 note; and that Mr. Tredway made out and sent his check for some $700 to Antisdel, which $700 was the difference between the amount due on the note and the sum of $3,000, which Tredway was owing Antisdel."

It appears that a chancery suit had been commenced by the defendant against Tredway, where it was claimed that defendant was a partner with plaintiff, and claiming a settlement of the partnership accounts. What the condition of that suit was at the time of this trial does not appear, but it does appear that testimony had been taken, and that plaintiff had testified in that suit. It is claimed by the plaintiff that the statement made by the circuit judge in regard to the return of the check was based upon the evidence in the chancery suit, but the record in that suit is not before us, and we cannot determine that question. It is evident that the judge based his statement upon some knowledge that the check was returned. The truth of this statement was not challenged by defendant's counsel, and it is very evident from the statement then made by him that he did not offer to show that the transaction amounted to a settlement or payment of this note, nor that the check was received by defendant in payment or settlement. Defendant had given no notice of set-off, and therefore this testimony was only admissible for the purpose of showing payment or settlement. The defendant was bound by the statement of his counsel, and, it failing to show either payment or settlement, the testimony offered was immaterial.

3. After the commencement of this suit defendant filed

a petition praying for an examination of the books of the firm of Arthur Tredway & Co. In this petition he stated that on the 12th day of April, 1889, in the chancery suit, plaintiff testified that, although the note of $5,000 was paid by a check signed in the name of Arthur Tredway & Co. on the Michigan Savings Bank of Detroit, and that although the money so paid was in the account of such partnership, yet that the same was not partnership money, but was his own individual funds.

Plaintiff, in his answer to this petition, set forth in full the testimony referred to in the petition, which is as follows:

"In answer to questions from Mr. Maxwell, who had put deponent on the stand as his own witness:

"*Q.* How was this $5,000 note held by Mr. Gale paid?

"*A.* That was paid by a note given to the Michigan Savings Bank.

"*Q.* You paid in the money or by check?

"*A.* I paid in by check.

"*Q.* Where was that check drawn?

"*A.* It was drawn on the Michigan Savings Bank.

"*Q.* Was that check drawn by you or by Tredway & Co.?

"*A.* Which?

"*Q.* That check.

"*A.* Tredway & Co. My personal account, as I stated yesterday, has always been kept with the firm's accounts.

"*Q.* Do you keep your account with the Michigan Savings Bank?

"*A.* Yes, sir.

"*On cross-examination by Mr. Post:*

"*Q.* This money that was obtained from the Michigan Savings Bank to pay the $5,000 Gale note, as it is called, about which you have just been questioned, was raised how?

"*A.* I gave them a mortgage on a house and lot on Trumbull avenue.

"*Q.* Your own individual property?

"*A.* My own individual property.

" *Q.* You gave that mortgage to the Michigan Savings Bank to raise the money to pay that note with?

" *A.* Yes, sir.

" *Re-direct:*

"*Q.* And then deposited the money in the bank, thus raised, to the credit of Arthur Tredway & Co., and then paid the note by check?

"*A.* Yes, sir.

"*Q.* You had deposits before in the same account, and also afterwards?

"*A.* I don't exactly understand.

"*Q.* You had deposits in the same bank before to the credit of Arthur Tredway & Co., and have also done so since?

"*A.* Oh, yes.

" *Re-cross:*

"*Q.* Your account with the Michigan Savings Bank has always been in the name of Arthur Tredway & Co., has it not, since you went there?

"*A.* Yes, sir.

" That the testimony as to how he kept his bank-account, as deponent said in one of said answers, ' As I stated yesterday,' is as follows:

"*Q.* Where did you keep your bank-account?

"*A.* At A. Ives & Sons' at that time.

" *Q.* Did you keep more than one account?

"*A.* No, sir.

" *Q.* So that your individual money and the firm money as well were deposited in the name of A. Tredway & Co. after that date?

"*A.* Yes, sir."

Upon the trial of this cause defendant offered to read this affidavit in evidence. This, under objection, was overruled, and defendant excepted. The claim made is that it tended to show that the $5,000 note was paid from partnership funds. I do not think that such an inference is to be drawn from the testimony. Plaintiff was the defendant's own witness in giving that testimony. This $5,000 note was not upon its face a partnership matter. Plaintiff testified that he mortgaged his own prop-

erty, and simply deposited the money received in the name of the partnership, and immediately gave the firm check to pay this note which the defendant had failed to pay, and on which plaintiff was liable as indorser or maker. Defendant offered no other testimony to show that this was paid from partnership funds. I do not think the court would have been justified in admitting this affidavit, and in permitting the jury to find from it that this note was paid with partnership funds.

4. This $5,000 note was indorsed as follows:

" A. R. Antisdel.
" Arthur Tredway.
" Mrs. Julia Pickering, per G. H. Gale.
" Mrs. Julia A. Pickering, by G. H. Gale.
" Indorsement guaranteed.    G. H. Gale."

It is claimed that this was not protested so as to charge plaintiff as indorser; that no notice was ever served on or received by plaintiff that would hold him as indorser; and that, therefore, he had no right to pay it. Plaintiff did receive notice of protest, and considered himself liable, and paid the note. Plaintiff was under no legal obligation to the defendant to contest the validity of the protest. Plaintiff indorsed the note before its delivery to the payee. He was, therefore, an original promisor, and liable without protest. *Rothschild v. Grix*, 31 Mich. 150; *Wetherwax v. Paine*, 2 Id. 555. But, even if plaintiff were an indorser, and the notice of protest insufficient to hold him, the defendant cannot raise that question. He is not prejudiced thereby, and is liable to the plaintiff whether the protest was legal or not. *Stanley v. McElrath* (Cal.), 22 Pac. Rep. 673; *McClatchie v. Durham*, 44 Mich. 435.

5. Defendant offered in evidence a statement submitted by plaintiff to defendant in September, 1888, which is as follows:

STATEMENT.

ARTHUR TREDWAY & CO.

LIABILITIES.

| | | |
|---|---:|---:|
| Bills payable, open accounts and general liabilities Aug. 1, 1888. | | $43,070 61 |

ASSETS.

| | | |
|---|---:|---:|
| Stock on hand as per inventory, Aug. 1, 1888, including furniture, fixtures, &c. | $20,189 39 | |
| Book debts, including cash on hand, in bank, bills receivable, &c. | 6,410 57 | |
| Bad and doubtful debts, $8,128.-59, say 20 per cent. | 1,645 72 | 28,245 68 |
| Deficit | | $14,824 93 |
| Due from J. F. Antisdel, ⅔ | $9,883 28⅔ | |
| Due from A. Tredway, ⅓ | 4,941 64⅓ | 14,824 93 |
| Due from J. F. Antisdel, ⅔ deficit account of Arthur Tredway & Co. | 9,883 28⅓ | |
| Due for amount paid to Mrs. Buckley estate by Arthur Tredway | 2,289 58 | |
| Interest on same from Jan. 5, '88, to Aug. 1, '88 | 91 27 | |
| Due from protested note paid by A. T. | 5,188 80 | |
| Interest on same from June 13, '88, to Aug. 1, '88 | 45 40 | |
| | $17,498 33⅔ | |

It is claimed by defendant that upon the face of this statement it shows that the payments made upon these notes by plaintiff were considered partnership matters. I do not think this to be the natural inference from the statement. It is upon its face a statement showing the total amount claimed to be due from defendant to plaintiff upon the basis that there was a partnership between them, and in addition the amount of these notes. So far as the partnership statement is concerned, it ends with the item:

"Due from J. F. Antisdel, ⅔ deficit account of Arthur Tredway & Co., $9,883.28⅔."

The other items are these two notes in controversy, with interest thereon, and show them to be due to plaintiff.

A reversal of this case means a decision that the circuit judge, who has occupied that high and responsible position for four years, and has been constantly engaged in the trial of causes, ruled out a defense of payment, settlement, and partnership. This would be a reflection upon his intelligence and knowledge of the law, which the record in this case does not warrant. It is elementary that either would have been a good defense. The learned counsel for defendant must have known that a *bona fide* defense on either of these points would have been received. It is evident that the defense was one of technicalities, and not of merits.

The judgment must be affirmed, with costs.

The other Justices concurred.