## Franklin Ripley vs. Jeremiah Greenleaf.

That a note, dated August 25th and payable in four years from date, falls due August 28th, if three days of grace are allowed. '

That the holder's taking collateral security does not discharge the endorser, unless he also suspend the right of action upon the note.

The plaintiff declared upon a note of $425, signed by one *Flavel Greenleaf*, and made payable to the said *Jeremiah Greenleaf*, or bearer, and by him, at its date, endorsed to the plaintiff. Said note bore date, August 25th, 1818, and was made payable in four years from date, with annual interest. The declaration alleged demand of payment on the 28th of August, 1822, and said *Flavel's* refusal to pay ; and immediate notice of non-payment to the defendant. The action was tried in the county court on the general issue, and several exceptions were taken to the decisions of the court and their charge to the jury ; some of which were afterwards abandoned. The plaintiff obtained a verdict, and the action was brought to this court on a motion for a new trial founded on the exceptions taken by the defendant, and allowed by the court ; which, so far as not abandoned upon the hearing before this court, were as follows, to wit :

" On the trial of this action, the note and its endorsments were read without objection. The plaintiff then produced testimony tending to show that in May or June, 1822, he applied to one *Alanson Clarke*, of *Greenfield*, in the State of *Massachusetts*, to go to the *westward*, and demand payment on a note, when the same should become payable ; and, in the mean time, to make inquiry for the residence of the said *Jeremiah*, and give him notice of non-payment, if payment should not be made when demanded of the signer. And the said *Clarke* was sworn, and testified that he went to the *westward*, and at *Edinburgh*, in the State of *New-York*, on the 27th day of August, 1822, he found said *Flavel Greenleaf*, and demanded of him the amount due on said note, who did not pay the same, and said he was poor and unable to pay it; that he tarried, endeavoring to obtain some security from said *Flavel*, during said day ; and on the next day, the 28th of August, early in the morning, the witness renewed the demand of payment, and was again refused ; that *Flavel* came with the witness seventeen miles on his return, when they separated."

The testimony, referred to in the case, concerning a *composition* between the plaintiff and *Flavel Greenleaf* was to the following facts, to wit : That said *Flavel*, when the payment was demanded, told the plaintiff's agent that, if the plaintiff would advance him raw hides, he would tan them into sole leather, and the plain-

R

WINDHAM,
February,
1829.

Ripley
vs.
Greenleaf.

tiff should have the avails on this note—That, in October follow-ing, the plaintiff did advance to said *Flavel* $121 98 worth of hides, under an agreement that said *Flavel* should tan them into sole leather, and the proceeds, if any, after paying the cost of the hides, should go on the note—That, about two years afterwards, the plaintiff called upon said *Flavel*, and was informed by him, that he was unable to make him any payment ; that the leather was not sold, and that it would not probably fetch more than the costs of the hides—That, during this interview, with a view to se-cure the plaintiff for the money advanced for the hides, and in hopes that something might be realized to go in part payment of said note, said *Flavel* told the plaintiff that he, said *Flavel*, owned a small house and an acre of land, which was mortgaged for part of the purchase money, to wit, for $150, and that he would give the plaintiff a mortgage of the same, subject to said previous mortgage—That said *Flavel* had paid $100, towards the place, and made some improvements, and thought it would yield the plaintiff something—That said *Flavel* agreed to give the plaintiff a note of $400, and secure the same by a mortgage upon said property, to secure him for the money advanced for hides—That the plaintiff told said *Flavel* he did not expect to obtain any thing from the endorser ; and that if said *Flavel* gave said note of $400, and said mortgage and note should be paid in one year from that time, it should cancel his demand for the amount paid for hides, and the said note given to said *Jeremiah :* but that said *Fla-*vel told the plaintiff he could not pay the money in that time, and so it was understood—That said *Flavel* was willing to do what he could in paying said note of $425—That, a few months after-wards, said *Flavel* made a note to the plaintiff for $400, payable in one year ; also a mortgage of said property to secure payment of it, and sent the same to the plaintiff by mail—That there was no other consideration for said note of $400, than said sum paid for hides, and the overplus to be applied on said note of $425—That the first mortgage upon the property still remained unsatisfied, and that the premises, if sold, would not fetch enough to pay said first mortgage, and the sum advanced for hides, though they cost said *Flavel* much more—That neither the plaintiff, nor any one in his behalf, ever agreed to wait upon said *Flavel* a single day after the note of $425 became due ; but the waiting was because a suit against said *Flavel* would avail nothing—That said note of $400, and mortgage to secure the same, were not designed by said *Flavel*, nor agreed, by the plaintiff, to destroy said note of $425, but only to be security for the money advanced for hides, and said note of $425, as above mentioned, if any thing should be

realized from the same—and that the plaintiff yet held the note of $400, and the mortgage, and that said *Flavel* had never yet paid the plaintiff any thing on any account whatever.

WINDHAM,
*February,*
1829.

Ripley
*vs.*
Greenleaf.

The defendant's counsel requested the Court to instruct the jury as follows, to wit :

*First,* That there had been no legal demand of the maker sufficient to charge the endorser.

*Secondly,* The *composition* was a new contract. Time and a new credit were thereby given to the maker of the note. This endorser, being no party to that agreement, was thereby discharged.

The court did not so instruct the jury ; but did instruct them upon the first point, that, if they believed the demand on said 27th and 28th days of August, as testified by said *Clarke,* that was in season to charge the endorser.

With regard to the second point, the court instructed the jury, that the plaintiff's obtaining collateral security from the maker would not, of itself, discharge the endorser. There must be something further—he must either have received the pay, or made some contract, by which his right of action against the maker was discharged or suspended—That the court had discovered no testimony of any contract to suspend the right of action against the maker ; but that all the testimony upon that point was before them in depositions ; and, if they should find any such evidence to convince them of that fact, it would discharge the defendant from his endorsement,

*For the defendant,* it was contended—That the arrangement, entered into between the plaintiff and *Flavel Greenleaf,* discharged the endorser.—1 *Wheat. Sel.* 274.—*Cooke's B. L.* 168, 169.—3 *Bro. Ch. C.* 1. *S. C.*—8 *East,* 576, *Gould* vs. *Robson.*

That the holder must demand payment of the maker on the day the note falls due. Without the days of grace, this note fell due on the 26th August, 1822, and the demand of payment should have been made on that day. If the days of grace are allowed, the note did not fall due before the 29th of August ; and a demand before that time is a nullity. *N. Y. Justice,*106.—8 *Mass. Rep.* 453.—6 *Term Rep.* 123.

*For the Plaintiff,* it was contended—That the note falling due on the 25th Aug. 1822, the plaintiff, who lived in *Greenfield, Mass.* made personal demand of the maker, at *Edinburgh,* N. Y. where he resided, which was sufficient ; it having been made on the 28th, which was the third day of grace. *Chit. on Bills, (Phil. ed.* 1827*)* 339, 4, 2.—*Id.* 209, *note.*—1 *Caines,* 413.—

WINDHAM,
*February,*
1829.

Ripley
*vs.*
Greenleaf.

*Id.* 343.—*Bailey on Bills, (ed. of* 1826*)* 151, 153.—*Id.* 126. 7 *Mass. Freeman* vs. *Boynton,* 483.—1 *N. H. Rep.* 140,*Haddock* vs. *Murray.*—*Chit. on Bills,* 343, *U. S. Bank* vs. *Williams.*

That the endorser was not discharged by dealings with the maker, no time having been given on the note, nor plaintiff's right to sue having been suspended. *Bailey on Bills,* 227—229, *and cases there cited.*—15 *Johns. Rep.* 338.—18 *id.* 28.—2 *Stark. Rep.* 178, *(*3 *Com. Law Rep.* 303*) Bedford* vs. *Deakin et al.*— 1 *Barn. & Cress.* 14, *(*8 *Com. Law Rep.* 10*) Pring* vs. *Clarkson.*

The opinion of the court was delivered by

HUTCHINSON, J.  Every thing connected with the question of notice to the defendant, of the nonpayment of the note by the maker, being now out of the case by an express abandonment of that part of the controversy, two questions only remain for our decision. 1st. Whether the demand of payment was so made by the plaintiff as to charge the endorser? and, 2dly. Whether the court gave the proper instructions to the jury upon the litigated point of a composition between the plaintiff and the maker of the note?

Upon the *first* question, the note bearing date August 25th, 1818, and made payable in four years from the date thereof, the defendant contends, that, allowing the three days of grace, the demand should have been made the 29th of August, 1822 ; whereas, it was made the 28th.  In support of this computation of time he cites *Cowen's Treatise, page* 106, where he says, that a note dated Sept. 1st, and payable in two months, falls due Nov. 2d.  I conclude this must be a misprint, or mistake of some sort, for I find no book that supports it.  *Kyd on Bills, page* 5, says, " if a bill is dated the first of January, and payable at one month after date, the month expires on the first of February."  So, on page 6th, " if a bill, dated the 29th, 30th, or 31st of January, be payable one month after date, the month expires the last day of February."  The rule seems to be, to exclude the day of the date, but not exclude the same day of the succeeding month.  In 17 *Mass. Rep.* 94, *Hartford Bank* vs. *Barry,* the note sued was dated May 20th, 1819, and payable in four months from the date, and grace.  Payment was demanded, and notice of non-payment given, September 23d, in the same year.  The same objection was made on trial as in this case, that the demand was made too soon.  The Chief Justice overruled the objection.  The question was saved, with others that arose ; and, on a hearing before the Court, at bar, the counsel for the defendant abandoned this objection, saying

WINDHAM.
*February,*
1829.

Ripley
*vs.*
Greenleaf.

the authorities were against him; and he referred to *Kyd*, 5 and 6.—
*Bayley*, 69, and *Chitty on Bills*, 74.

We recollect no decision of the Supreme Court in this state, nor is any now produced, which is an authority, either to include or exclude the days of grace. In the case of *Nash* vs. *Harrington*, reported in 2 *Aiken's Reports*, this Court decided to follow the rules of the *Law Merchant* with regard to demand and notice. If the question of allowing the days of grace or not, in matters transacted in this state, were now urged upon us, we might feel inclined to save the question till we could ascertain the opinion of our absent brethren. But we are freed from all difficulty in two ways, 1st, The counsel, on both sides, are agreed in their arguments that the three days of grace ought to be allowed in the present case. 2dly, The maker of the note resided in the state of *New-York*, when the note became due, and the demand was made of him there. We understand the three days of grace are there allowed as a matter of right. If so, it is correct to adopt the same rule here in a case where the demand was made in that state.

It is further urged, that this demand was made too soon, by being made in the morning of the 28th. Having already adjudged the 28th to be the true day on which the note fell due, allowing the days of grace, we have no doubt but that the demand of payment should have been made towards the close of the day, if nothing intervened to operate as a waiver of that ceremony. It appears by the case that *Clarke*, the plaintiff's agent, arrived at *Edinburgh*, *New-York*, on the 27th of August, and found *Flavel Greenleaf*, the maker of the note, and demanded payment. He refused payment, saying he was poor and unable to pay the same —*Clarke* tarried, endeavouring to obtain security, through the day without effect—That on the next day, the 28th, early in the morning, *Clarke* renewed the demand of payment, and was again refused—And that *Flavel* accompanied *Clarke* seventeen miles on his way back, and then they separated. Now, it is certain that, if *Clarke* had not found *Flavel* at home, or, finding him and making demand of payment, had received no reply, or one merely evasive, he must have tarried till towards sunset, and then made a formal demand. But *Flavel* uses no evasion. He discloses frankly all he could ever disclose on the subject; relates his total poverty and inability to pay the note, which also now appears to have been a true relation; and having no idea of attempting any preparation to pay the note, accompanies the plaintiff's agent nearly a half day's ride on his homeward route. This may well be considered a waiver of any further demand. It must have

WINDHAM,
February,
1829.

Ripley
vs.
Greenleaf.

been so considered in a suit against *Flavel*, if the note had been so written as to require a special demand before an action would lie : and there is no reason why it should not be so considered where the endorser is concerned.   The waiting through the day, under all these circumstances, could have been no other than an idle ceremony, and a useless waste of time.

*Secondly.*  The defendant urges that there was testimony in this case tending to show a contract between the plaintiff and the maker of the note, suspending the right of action upon the note ; and this ought to discharge the endorser : and further, that the charge of the Court upon this point was incorrect. The Court told the jury they had discovered no testimony of any such contract ; that whatever testimony there was upon the point, was contained in the depositions which would be delivered them ; and, if they found evidence to convince them of that fact, it would discharge the defendant from his endorsement.   The objection to this is, that the Court ought, instead of the above, to have drawn the attention of the jury to the particular parts of the testimony, and left to them to infer that such a contract was made between the holder and the maker as suspended all right of action against the maker.   The Court find no labor in deciding that such a contract, if proved, would discharge the endorser.   The only dispute regards the application of the principle to the case.   The authority cited from the 8th of *East*, 576, supposed by the defendant's counsel to be parallel with this, is a plain case within that principle.   There the holder received about half the amount of the bill from the acceptor, and received an acceptance on a new bill, payable at a future day, for the remainder ; with an agreement that the original bill should remain in his hands as security. Here we ought to bear in mind that the new bill was the evidence of his debt, and was payable at a future day, and the old one remained as security.   There was, in any event, to be a waiting till the new bill became payable.   Now we will search for a parallel circumstance in the case before the Court.   All the testimony about the new note and mortgage, whether we call them collateral security or any other name, is contained in the several depositions of *Flavel Greenleaf* himself.   The defendant, of course, relies upon this to prove that the new note and mortgage had become the debt, and the old note a mere security for the payment, but not to be pursued till the new note was payable.   The witness, instead of proving this, contradicts it *in toto*.   The old note was for $425, with four or five years, interest.   The new one was only for $400, and that included $121 98 paid out by the plaintiff for hides.   The witness says the plaintiff proposed to him, several months before the giving of the new note, that, if such note

were given, and paid within the year, he would cancel the old note. But witness told him he could not pay so soon. He further testifies expressly that there never was any agreement whatever, that the old note was to lie without a suit even a single day ; and that he never has paid the plaintiff any thing on any account whatever. And further, that the land mortgaged will not sell for more than sufficient to clear off the prior incumbrance, and pay for the amount of the hides. In short the witness contradicts all the defendant wishes to prove by him. There appears nothing in the way of a suit the plaintiff might any time have brought against the maker : and, notwithstanding any thing that now appears, he must have recovered the full amount, for nothing has ever yet been realized by the plaintiff from his collateral security. The Court are of opinion that there was no testimony upon this point, that required any further instructions to the jury.

The Judgment of the County Court is, therefore, affirmed.

*Bradley* and *Kellogg*, for plaintiff,

*John Phelps*, for defendant.