PENINSULAR SAVINGS BANK *v.* HOSIE.[1]

| 112 | 351 |
| 115 | 159 |

| 112 | 351 |
| 122 | 612 |

| 112 | 351 |
| 135 | ³269 |

| 112 | 351 |
| 136 | ³522 |

1. BILLS AND NOTES—EXTENSIONS—RELEASE OF SURETY.

The acceptance by the holder of a past-due promissory note of a new note for the amount of the old, with interest, payable "on demand after date," with interest, is not such an extension of time as will release an indorser of the old note, since the new note is due and suable immediately.

2. SAME—NOTE PAYABLE TO MAKER—LIABILITY OF INDORSER.

It is not necessary that the indorser of a note, who knows that it is drawn payable to the maker's order, should have knowledge also that it is to be issued without the maker's indorsement, in order that it may be valid against him under 1 How. Stat. § 1580, providing that notes made payable to the maker's order shall, if negotiated by him, be of the same validity as against the maker, and "all persons having knowledge of the facts," as if payable to bearer.

3. SAME—JOINT MAKERS.

One who indorses a note payable to the maker's order, at the time of its execution and before delivery, is liable as a joint maker of the note, even though his indorsement follows that of the payee.

Error to Wayne; Lillibridge, J. Submitted November 12, 1896. Decided April 27, 1897.

The Peninsular Savings Bank presented two promissory notes as a claim against the estate of J. Huff Jones, de-

[1] Rehearing denied July 16, 1897.

ceased. They were allowed by the commissioners, and the executors, Robert Hosie and another, took a separate appeal as to each of the notes to the circuit court. From a judgment for defendants on verdict directed by the court, claimant brings error. Reversed.

*De Forest Paine*, for appellant.

*Walker & Spalding*, for appellees.

MOORE, J. The Detroit Motor Company, a corporation, made and delivered to the Third National Bank of Detroit, in renewal of notes then held by said bank, its promissory notes, of the following tenor:

"$10,000.00.        DETROIT, MICH., Nov. 17, 1892.
"Two months after date the Detroit Motor Co. promise to pay to themselves or order ten thousand and no-100 dollars at the Third National Bank. Value received,— with interest at 7 per cent.
    [Signed] "THE DETROIT MOTOR COMPANY.
        "F. A. BLADES, Sec'y and Treas."

Said note was indorsed on the back in the following order: "Detroit Motor Co., by F. A. Blades, Treas. Ellwood T. Hance. T. B. Rayl. J. Huff Jones. W. H. Ellis. W. C. Maybury. Chas. W. Casgrain. F. A. Blades."

"$7,500.00.        DETROIT, MICH., Oct. 22, 1892.
"Three months after date the Detroit Motor Co. promise to pay to themselves or order seventy-five hundred dollars at the Third National Bank. Value received,—with interest at 7 per cent. per annum.
    [Signed]    "THE DETROIT MOTOR COMPANY.
        "F. A. BLADES, Sec'y and Treas."

Said note was indorsed on the back in the following order: "F. A. Blades. W. C. Maybury. J. Huff Jones. Chas. W. Casgrain. Ellwood T. Hance."

The indorsements were procured before the delivery of the notes to the Third National Bank, and when the notes were received by said bank all the indorsers' names now

upon them were then upon them.    The notes were deliv-
ered to said bank on the day of their dates, respectively.
The notes were in renewal of paper which the Third
National Bank had paid value for to the Detroit Motor
Company.    The indorsers were directors of the Detroit
Motor Company, and its chief stockholders, and put their
names upon the paper for the accommodation of the com-
pany.    Before either of the notes fell due, and on the 16th
day of December, 1892, J. Huff Jones died, leaving a
will, which was filed in the probate court for Wayne
county, with a petition for its probate, on December 28,
1892, and admitted to probate the 24th day of January,
1893.    On the last-named day, Robert Hosie, who resides
in Detroit, Mich., and Griffin D. G. Thurston, who resides
in Sturgis, Mich., were appointed executors.    On that day
they filed their bonds, and letters testamentary were issued
to them.    Before the will was admitted to probate, and on
the 20th day of January, 1893, the $10,000 note fell due,
and was protested for nonpayment.    The next day after
the will was probated, and on the 25th day of January,
1893, the $7,500 note fell due, and was protested for non-
payment.    The executor admits that he received, in due
course of mail, notice of the dishonor of the $7,500 note,
which notice he produced, but denies that he received
notice of the dishonor of the $10,000 note.

Shortly after the death of Mr. Jones, and before the
notes fell due, one of the indorsers, Mr. Hance, mentioned
to the cashier of the Third National Bank the fact of the
death of Jones.    On the 21st day of April, 1893, the
Third National Bank took from the maker its note of the
following tenor:

"$18,070.31.            DETROIT, MICH., April 21, 1893.
    "On demand after date the Detroit Motor Co. promise
to pay to themselves or order eighteen thousand seventy
31-100 dollars at the Third National Bank.    Value re-
ceived,—with interest at 7 per cent.
                            "DETROIT MOTOR CO.,
                        "By F. A. BLADES, Treas."

Memorandum on face of note:

"Two notes, $10,000 and interest, $7,500 and interest, as collateral; indorsed J. Huff Jones and others."

Indorsed on back:

"DETROIT MOTOR CO., by F. A. BLADES, Treas."

Afterwards the Third National Bank transferred the $10,000 note and the $7,500 note to the Peninsular Savings Bank, the claimant, in payment of indebtedness of the Third National Bank to the Peninsular Savings Bank. The note of April 21, 1893, was delivered with the other two notes. By some accident or oversight, when the $7,500 note was delivered to the bank, Mr. Blades, who was the secretary and treasurer of the motor company, failed to indorse the name of the motor company upon the note. Mr. Blades prepared the notes sued upon, and procured the signatures of the indorsers to them. They are made payable to the order of "themselves," which Mr. Blades says meant the corporation itself, and in indorsing the note of April 21, 1893, he so considered and treated it, as well as in indorsing the note of $10,000. The Peninsular Savings Bank presented to the commissioners on claims in the Jones estate the two notes sued upon, and the commissioners allowed the claim on the notes, one at the sum of $11,896.80, and one at the sum of $8,958.72. Thereupon the executors took separate appeals from the judgment of the commissioners, and in the circuit court a verdict was directed for the estate on each note. The Peninsular Savings Bank appeals.

It is claimed that the giving of the note of April 21, 1893, "payable on demand after date, with interest," gave one day's time to the motor company upon the notes sued upon, and, because of the extension of time, released Mr. Jones. The counsel for the estate have made an able argument in support of their contention, and have cited a number of authorities. We understand the rule to be:

"The statute of limitations begins to run from the very day the right of action accrues. Thus, upon a note pay-

able so many days from the date, it begins to run from the day of payment, and not from the day of date; but the day of maturity is excluded in the computation of time. If payable at sight, the statute runs from sight. If so many days after sight, or after certain events, then from the time named after sight, or after the events have happened. If the instrument be payable on demand, the statute begins to run immediately. 'On demand after date' is the same as 'on demand.'" 2 Daniel, Neg. Inst. § 1215.

In *O'Neil* v. *Magner*, 81 Cal. 631, it was held that a promissory note made payable on demand after date is an ordinary demand note, payable at once, on which an action can be brought immediately after it is given. To the same effect are *Turner* v. *Mining Co.*, 74 Wis. 355; *Hitchings* v. *Edmands*, 132 Mass. 338; *Fenno* v. *Gay*, 146 Mass. 118. We cannot agree with counsel that the giving of this note was such an extension of time · as to discharge Mr. Jones from liability.

The $7,500 note was made by the Detroit Motor Company, payable to itself or order, and was delivered to the Third National Bank without indorsement by the motor company. It is claimed by the counsel for the estate that this note was a nullity. Doubtless it would be at the common law, but we have a statute reading as follows:

"Such notes made payable to the order of the maker thereof, or to the order of a fictitious person, shall, if negotiated by the maker, have the same effect and be of the same validity, as against the maker and all persons having knowledge of the facts, as if payable to bearer." 1 How. Stat. § 1580.

There can be no question, from the record, that all the parties to this instrument knew that it was made for the purpose of taking the place of a note then in the bank that was past due. It is claimed, however, that the "knowledge of the facts" mentioned in the statute must embrace knowledge of the fact that it was to be put in the bank without the indorsement of the payee. We think such a construction is too narrow, and would defeat the purpose

of the statute. A like statute has been construed in other States. See *Plets* v. *Johnson*, 3 Hill, 112. And it has been held, in construing such a statute, that "the facts of which a person must have knowledge in order to give the note efficacy as against him, as if payable to bearer, are simply that the note is payable to the order of the maker, or of a fictitious person." *Irving National Bank* v. *Alley*, 79 N. Y. 536. See, also, *Lowrie* v. *Zunkel*, 49 Mo. App. 153. We think the note was not a nullity, but was a valid note, as to all the parties to it who had "knowledge of the facts."

The inquiry naturally arises, What was the relation of Mr. Jones to this note? Was he a joint maker, or was he an indorser? We have already called attention to the provisions of section 1580, 1 How. Stat. Both of the notes were made to be discounted at the bank. The failure of the payee to indorse the $7,500 note was due to an inadvertence. The other note was indorsed by the payee at the time it was made, and it was the intention to indorse both notes. The names of the indorsers were put on the back of both notes before their delivery, and before they were discounted, for the purpose of enabling the Detroit Motor Company to discount them. We have already indicated what we think is the effect of the provisions of the statute upon the first note. It has been repeatedly held by this court that a third person indorsing a note at the time of its execution, and before delivery, is a maker, jointly with the drawer of the note. *Wetherwax* v. *Paine*, 2 Mich. 555; *Rothschild* v. *Grix*, 31 Mich. 150; *Herbage* v. *McEntee*, 40 Mich. 337; *Moynahan* v. *Hanaford*, 42 Mich. 329; *Tredway* v. *Antisdel*, 86 Mich. 82. We think J. Huff Jones was a joint maker of both notes. This view of the case makes it unnecessary to discuss the questions growing out of the protest of the notes, as protest was not necessary to make Mr. Jones liable. *Tredway* v. *Antisdel, supra.*

Judgment in each case is reversed, and judgment is

entered here in each case for the amount of the respective notes, with interest to this date.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred.  GRANT, J., did not sit.