CITIZENS' COMMERCIAL & SAVINGS BANK OF FLINT *v.* PLATT.

1. BILLS AND NOTES — INDORSEMENT BEFORE DELIVERY — JOINT MAKERS.
    A third person indorsing a promissory note before delivery is liable as a joint maker.

2. SAME—PAYMENT—RENEWAL NOTE.
    The receipt and acceptance of a renewal note and surrender of the original note constitute a payment of the original note.

3. SAME—WANT OF PROTEST—BURDEN OF PROOF.
    In an action upon a note executed by one partner in the firm name in renewal of a note on which they were indorsers, the burden of showing that the first note was not protested, in

consequence of which the indorsers were discharged, is upon the defense.

4. SAME—PARTNERSHIP—AUTHORITY.
    The managing member of a firm has authority to execute for the firm as joint makers a note in renewal of a former one on which they were liable at the time as indorsers.

Error to Genesee; Beach, J., presiding. Submitted November 6, 1903. (Docket No. 101.) Decided December 22, 1903.

*Assumpsit* by the Citizens' Commercial & Savings Bank of Flint against Fred A. Platt and Marshall T. Gass, copartners as F. A. Platt & Co., and Michael E. Houran and I. Wixom Whitehead, copartners as Houran & Whitehead, upon a promissory note. From a judgment for plaintiff on verdict directed by the court, defendant Houran brings error. Affirmed.

In 1895 the defendants Houran and Whitehead were copartners doing business in Flint under the firm name of Houran & Whitehead. The defendants Platt and Gass were copartners doing business in the same city under the firm name of F. A. Platt & Co. About the 1st of October, 1895, Houran & Whitehead sold goods to Platt & Co., for which they received in payment a demand note for $1,570, executed by F. A. Platt & Co., payable to Houran & Whitehead. Houran & Whitehead indorsed it, and presented it at the plaintiff bank, which, at their request, discounted it for Houran & Whitehead, who received and used the entire amount paid. It was three times renewed, the last note being dated December 28, 1899, and being the one now in suit. Houran alone defends. As each renewal note was presented at the bank, it was accepted, and the old note surrendered. At the giving of the last note, Platt & Co. assigned some stock in a corporation as security, which proved to be worthless. The three renewal notes were given directly to the bank as payee, and all bore the indorsement of Houran &

Whitehead. Whitehead had attended to the financial transactions of his firm. All the indorsements were signed by him for the firm. Houran & Whitehead dealt with the plaintiff all these years, and Whitehead attended to all the business with the bank. A few small payments were made. Plaintiff made an effort to collect the first note from the makers. There is no evidence to show that the first note was protested. The only testimony upon the point is that of Houran that he knew of no protest being served. Under the undisputed evidence in the case, it would have been served upon Whitehead, and not upon him. At the conclusion of the testimony the court directed a verdict for the plaintiff.

*Rundell & Stockton* and *Black & Roberts*, for appellant.

*Lee & Parker*, for appellee.

GRANT, J. (*after stating the facts*). The defense is that Houran & Whitehead were discharged on the first note, and that Whitehead had no authority to sign the firm name to the renewals, or to change the liability from indorser to that of maker. On the first note Houran & Whitehead were indorsers, and not joint makers. On the last note they were joint makers. *Peninsular Sav. Bank* v. *Hosie,* 112 Mich. 351 (70 N. W. 890). Whether they were makers or indorsers of the two intermediate notes does not clearly appear; neither is it material. The receipt and acceptance of each renewal note and the surrender of the former note constituted a payment of the former. *Childs* v. *Pellett,* 102 Mich. 558, 567 (61 N. W. 54), where this question is discussed and authorities cited.

Plaintiff made a *prima facie* case by proving the execution and indorsement of the note in suit. The burden of proof lay with Houran & Whitehead to show that the first note was not protested, and that they were discharged as indorsers thereof. *Conley* v. *Winsor,* 41 Mich. 253 (2 N. W. 31). They failed to show it. It must therefore be

assumed that, when the first renewal note was given, they were still liable on the first note. It follows that Mr. Whitehead was authorized to renew the note. If the bank had insisted that they should take the note up and give their own note instead, and Whitehead had so done, he would have been acting within his authority. Mr. Houran, his partner, cannot now defend upon the ground that the indorsement in law made them joint makers instead of simply indorsers. Houran & Whitehead were not accommodation indorsers. An accommodation indorser is one who indorses a bill or note in order to enable another to obtain credit or money on it. Platt & Co., the makers, did not ask Houran & Whitehead to indorse this paper for their accommodation, or in fact to indorse it at all. They gave it in payment of a debt, and Houran & Whitehead, for their own accommodation, asked plaintiff to discount it for their (Houran & Whitehead's) sole benefit. The plaintiff was dealing with the authorized manager of the firm. It might have insisted upon payment, and a payment by Whitehead for the firm would, of course, have bound the firm. Plaintiff might have refused to renew the note, but have offered to take the note of Houran & Whitehead alone. If they had insisted upon the latter, it would not have been the legal duty of the bank to see the other partner or partners and ascertain if they assented to giving the firm's note in payment of the other. They were liable. It was due. They had received the consideration. The bank was dealing with the member of the firm who had attended to its financial transactions with it. It was therefore within the authority of Mr. Whitehead to make the indorsement he did, and thus bind the firm as joint makers.

Judgment affirmed.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred. HOOKER, C. J., took no part in the decision.