## DIES ET AL., v. WILSON COUNTY BANK.

### (*Nashville.* December Term, 1913.)

1. **PRINCIPAL AND SURETY. Discharge of surety. Taking additional security. Note of principal debtor.**

   The sureties on a note, which expressly stipulated that they should not be discharged by an extension of time granted to the principal, are not released by the acceptance by the payee of an additional note from the principal debtor payable at a later date, not as a renewal of the former note, but as an additional evidence of the debt. (*Post, p. 94.*)

2. **PRINCIPAL AND SURETY. Discharge of surety. Reservation of rights against surety. Statutory provision.**

   The Negotiable Instruments Act (Acts 1899, ch. 94, sec. 120, subsection 6), providing that a surety is not discharged by the taking of a renewal note from the principal extending the time of payment, where the extension is given under an express reservation of the right of recourse against the surety, applies where the original note is retained in posession by the payee, and the right of action thereon against the surety is thereby reserved. (*Post, p. 94.*)

   Acts cited and construed: Acts 1899, ch. 94, sec. 120, subsec. 6.

   Case cited and approved: Meredith v. Dibrell, 127 Tenn., 387.

3. **NOVATION. Burden of proof.**

   The burden of proving novation of a note by a later note is upon him who asserts it. (*Post, p. 95.*)

   Cases cited and approved: Sharp v. Fly, 68 Tenn., 4; Lover v. Bessenger, 68 Tenn., 393.

4. **BILLS AND NOTES. Payment. New note. Presumption. Express agreement.**

   Where a new note is given to represent the original consideration and the old note is retained, while it is presumed that the

old note is extinguished by the later one, an express agreement by the parties as to the payment or nonpayment of the old note will control. (*Post, pp.* 95-100.)

Case cited and approved: Bowman v. Rector, 59 S. W. 389, 398.

5. **BILLS AND NOTES.** Collateral securities. Notes representing the same debt.

Two notes representing the same debt may be outstanding at the same time, the one as collateral to the other, and either the original or the renewal note may be held as collateral to the other. (*Post, p.* 96.)

Cases cited and distinguished: Continental Life Ins. Co. v. Barker, 50 Conn., 567; National Park Bank v. Koehler, 137 App. Div., 785.

Cases cited and approved: Ripley v. Greenley, 2 Vt., 129; Bank v. Parriott, 125 Cal., 472; Fisher v. Denver Nat. Bank, 22 Colo., 373; Weakly v. Bell, 9 Watts (Pa.), 273; Peninsular Savings Bank v. Hosie, 112 Mich., 351.

6. **BILLS AND NOTES.** Collateral security. Notes of same maker.

While the maker of a note, which was signed by two others as sureties, cannot pledge the note as collateral for a note executed by himself alone and evidencing the same debt, since that note is a liability of his and not an asset which may be a subject of a pledge, that rule does not prevent the payee of the secured note from holding it as collateral for the second note. (*Post, p.* 99.)

Cases cited and approved: International Trust Co. v. Union Cattle Co., 3 Wyo., 803; *In re* Waddell-Entz Co., 67 Conn., 324; Easton v. Bank, 127 U. S., 532; Dibert v. D'Arcy, 248 Mo., 617.

7. **JUDGMENT.** Separate notes for same debt. Collateral satisfaction.

In such a case the creditor can make but a single proof against the debtor and have but one satisfaction. (*Post, p.* 101.)

Cases cited and approved: International Trust Co. v. Union Cattle Co., supra; In re Waddell-Entz Co., supra.

Dies v. Bank.

8. **BILLS AND NOTES.** Collateral security. Notes of the same maker. Different debts.

The fact that the subsequent note included other indebtedness, or a new one in addition to that represented by the old note, does not affect the rule. (*Post, p.* 101.)

Case cited and approved: Ripley v. Greenleaf, supra.

Case cited and distinguished: Cotton v. Atlas Nat. Bank, 145 Mass., 49.

9. **PRINCIPAL AND SURETY.** Discharge. Note held as collateral. Part payment of principal note.

Where the payee of a note, signed by a principal and two sureties, accepted another note from the principal representing the same and additional indebtedness, under the express agreement that the old note was to be retained as collateral for the new, the proceeds of property mortgaged as security for the new note, which were applied to the payment of the debt represented thereby, released *pro tanto* the sureties on the old note. (*Post, p.* 101.)

Cases cited and approved: Bussey v. Grant, 29 Tenn., 238; Mason v. Smith, 79 Tenn., 67, 74.

---

FROM WILSON.

---

Appeal from the Circuit Court of Wilson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court. —JNO. E. RICHARDSON, Judge.

W. R. CHAMBERS, for plaintiff.

LILLARD THOMPSON, for defendants.

Mr. Justice Williams delivered the opinion of the Court.

This case was brought upon a note dated September 30, 1910, in terms as follows:

"Four months after date we promise to pay to the order of · the Lebanon National Bank, one hundred ninety-eight & 35/100 dollars.   Renewal of note due Wilson County Bank.

"The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and nonpayment of this note, and in case of suit agree to pay. court costs and all reasonable attorney fees for collecting same, and the principal may be granted further time, after due, from period to period, on payment of interest, without releasing sureties.

"[Signed]                    "R. A. Denton.

                             "J. R. Odum, Security.

                             "J. L. Dies, Security."

The case was tried before the circuit judge without the intervention of a jury; and the court on request filed a written finding of facts, among which are the following:

That after the above note became due the defendant, R. A. Denton, principal, executed to the bank another note of $779.01, which covered all of the indebtedness of Denton to the bank, including the amount due on the above note in suit, as well as some other notes and some items of money at the time borrowed, and that a mortgage upon certain personalty of Denton was taken to secure the payment of the $779.01 note.

Dies v. Bank.

The last note embodied an agreement that the note in suit "shall be held by the bank as collateral security."

That no agreement for delay or extension of time by the note in suit was entered into unless, as a matter of law, the execution of the $779.01 note which matured six months after its date, April 11, 1911, amounted to such agreement.

That the execution of the new and larger note was not accepted by the bank as renewal of the note in suit, nor as payment of same, but it was taken and held as additional evidence of the indebtedness, the same in part as that evidenced by the note in suit.

That the proceeds of the sales under the mortgage, $277, were paid and credited on the $779.01 note.

That the two sureties, Dies and Odom, did not know of the execution of the $779.01 note until some time thereafter, when their principal, Denton, informed them that the old note had been settled by the new note, with other security, to wit, the mortgaged personalty.

The circuit judge thereupon rendered judgment against the principal and the sureties for the full amount of the note, and the sureties appealed to the court of civil appeals, which modified the judgment as below indicated.

Petition for *certiorari* was filed to bring the cause before this court for review.

The grounds urged for reversal are: (1) That the sureties were released from liability on the note in

suit by the bank's action in extending the time of payment in taking the larger note; (2) because the note sued on was or should be deemed to be fully paid by the proceeds of the mortgage, $277.

It is clear that, even if the second note is to be deemed a renewal or extension of the first, the appellant sureties cannot successfully claim that they were released from liability by reason of such renewal or extension granted by the bank to their principal, since, first, the note in suit expressly stipulated that the principal might be granted further time after the note was due, from period to period without releasing the sureties.

Second, under our Negotiable Instruments Act (Acts 1899, ch. 94, sec. 120, subsec. 6) a surety on a note is not discharged by the taking of a renewal note of the principal, extending the time of payment, without notice to the surety, where the extension is given under an express reservation of the right of recourse against the surety. And this principal is operative if we can construe the finding of facts to be that the note in suit was retained in possession by the bank, and that the right of action thereon against the sureties was thereby reserved. *Meredith v. Dibrell,* 127 Tenn., 387, 155 S. W., 163, 46 L. R. A. (N. S.), 92.

In the event first above stated (without discussion of or specific ruling on the second ground above) the sureties were not released; it appearing that the second note was in point of fact not accepted by the bank

Dies v. Bank.

even as a renewal, but only as an additional evidence of the indebtedness.

A contention of appellant sureties, however, is that the second note amounted to a novation or payment of this note in suit, as a necessary legal deduction or consequence.

The burden of proof to show novation of a note by a later note is upon him who asserts that there has been a novation. *Sharp v. Fly,* 9 Baxt., 4; *Lover v. Bessenger,* 9 Baxt., 393; 29 Cyc., 1139.

The rule is established by the weight of authority. that where a new note is given to represent the consideration of a former note, and the original is retained, the new note operates only as a suspension of the debt evidenced by the original, and is not a satisfaction of it until paid. Daniel, Neg. Inst., sec. 1266. This author declares that there would be no cancellation of the older note by the later one if such were not the intention of the parties, and that it should be shown that it was expressly agreed that the old one should be extinguished, in order to have the effect of extinguishment.

The rule has been modified in this State to the extent that a presumption is raised that the old note is extinguished by the later one; but, if this presumption could prevail at all in cases where the old note was retained, it has been held that proof of an express agreement of the parties touching extinguishment or payment or the reverse will control. *Bowman v. Rector,* 59 S. W., 389, 398.

The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor; and where the intention is shown, as in the case at bar, to have been to the contrary, it seems clear that neither novation nor payment resulted.

The fact that two evidences of one debt in the two notes outstand at the same time should not confuse the determination of the real rights of the parties. Such practice is not uncommon in business operations; and it is well recongized by the law that one of such evidences of the same debt may be treated as collateral to the other, and the only point of difficulty in the cases has been in relation to a surety on the paper, and as to when an agreement embodied or implied in the later obligation operates to postpone the remedy against the principal, which factor, we have seen, is not a determining one in this litigation.

The cases are numerous that illustrate the rule that two evidences of the same debt may outstand, the one as collateral to the other; and they are partially collated in 7 Cyc., 894, 895, to support the doctrine of the text to the effect that there is no extension of a note, so as to postpone suit or discharge a surety, where another note of the maker is taken merely as such collateral.

In *Continental Life Ins. Co.* v. *Barker,* 50 Conn., 567, it appeared that there was a renewal note (not in payment or satisfaction) secured by a mortgage on realty taken from the maker of a prior note, on which

prior note there was an indorser, who did not agree to the renewal. The court said: "It is expressly found that the second note was taken as additional security for the balance due on the original note, and not in satisfaction of it nor as a substitute for it. Both notes were liable to be sued at any time; the one being overdue and the other on demand. Of course the indorser could have paid the first note and could at once have brought a suit against the maker. He was also entitled to the additional security, and could at once have brought a suit on that note, and could also have proceeded to foreclose the mortgage. Instead of being prejudiced by the transaction it was, in theory at least, a benefit to him."

In *Ripley* v. *Greenleaf,* 2 Vt., 129, where it appeared that the holder of a note, having advanced other sums to the maker, took a new note and a mortgage, which new note and mortgage were to secure both the old note and the subsequent advance, nothing being said as to the holder suing on the old note, it was held that the transaction did not suspend the holder's right to sue on the old note. See, also, *London, etc., Bank* v. *Parriott,* 125 Cal., 472, 58 Pac., 164, 73 Am. St. Rep., 64; *Fisher* v. *Denver Nat. Bank,* 22 Colo., 373, 381, 45 Pac., 440.

Some of the cases present the phase of the new note of the same maker being taken as collateral to an earlier note, while others present the converse phase, the maker's executing a new note, and the payee re-

taining, under agreement, the earlier note as collateral; but both are as one so far as the point here under discussion is concerned.

A case presenting the latter phase is that of *National Park Bank* v. *Koehler,* 137 App. Div., 785, 122 N. Y. Supp., 490, decided by the supreme court of New York. It there appeared that the maker of a note on which Koehler was indorser, shortly before maturity of that note requested an extension or renewal. The indorser being out of the country, the maker suggested to the holder bank, which had declined to accept a new indorser on the renewal note, that the old note with Koehler's indorsement be held by the bank as collateral until the new note was paid. This was acceded to. The court held that plainly the first note, sued on, was not paid; that the fair inference from the entire transaction (including the fact of the protest of the first note) was that the bank reserved its right to proceed forthwith against Koehler, as indorser; that Koehler could have taken up the indorsed note and sued the maker. The court further said: "Each case turns on the intention of the parties, which is a question of law if their acts and words are unequivocal, a question of fact if different inferences may be drawn." See, also, Brannan, Neg. Inst. 122; *Weakly* v. *Bell,* 9 Watts (Pa.), 273, 36 Am. Dec., 116, 124; *Peninsular Savings Bank* v. *Hoise,* 112 Mich., 351, 70 N. W., 890.

As will be noted, the only difficulty the court had in the above New York case was on the point whether there was fairly inferable a reservation by the bank

of a right of action against the indorser (a point of discussion of which under the Negotiable Instruments Act we have already waived as unnecessary), but the court conceived that the first note was clearly collateral to the second.

But it is argued that, since the first note was recited in the second to be held as collateral security, by operation of law the first note was necessarily extinguished, since in order to a pledge thereof by the maker as pledgor it must be conceived of as being in his possession to pledge; and, when in his possession, it would be extinguished as to the sureties thereon.

In a true sense one personal obligation of a debtor proper cannot become the subject-matter of a pledge or collateral security proper, or in the sense of *pledged* collateral, for the security of another obligation of the same debtor, for the reason that a debtor's own personal obligation is no part of his personal property, and cannot be the subject of such a pledge—is a liability and not an asset. *International Trust Co.*, v. *Union Cattle Co.*, 3 Wyo., 808, 31 Pac., 408, 19 L. R. A. 640; *In re Waddell-Entz Co.*, 67 Conn., 324, 35 Atl., 257; 31 Cyc., 794; Jones, Coll. Sec., sec. 1.

There is nothing in these cases (and the authorities so treat of them) that militates against the rule, above recited, that one evidence of the same debt may stand as collateral to another evidence of the same debt.

In the case at bar there was no pledge of the first note attempted to be made as proceeding from the possession of the maker, Denton. The agreement was,

as found, that the bank retained possession, and the second note only recited that it was "*held* by the bank as collateral security," which, as we have seen, was competent to be done. Further, the trial judge found that the new note was not even held as a renewal, but "was taken, and held as an additional evidence of indebtedness." In other words, both evidences were to exist, each collateral to the other. The finding of fact negatives the possession of the note on the part of Denton for any attempted pledge purpose proper.

Mr. Jones, in his work on Collateral Securities, at the section cited supra, after stating the rule that the personal obligation of the principal ,debtor is not, strictly speaking, pledgeable as collateral security to that debtor's obligation, proceeds to say that where the note placed as collateral was one signed by the maker *and indorsed by three others,* "it is difficult to see any good reason why this note should not have been regarded as collateral security. The indorsed note may have had the effect of extending the time of payment," and for that reason have released the surety. But the phase of release is one we are to leave aside in the case at bar, we repeat. When thus left, nothing can be urged, as we conceive, to effect a discharge of the sureties.

It has, quite unanimously we believe, been held that a note of A., which has collateral securities attached or a lien incident, may be treated as collateral to another note of A., and both the note and its collateral or lien enforced so far as to preserve to the creditor the

benefit of the collateral or lien. *In re Waddel-Entz,* supra; *Easton* v. *Bank,* 127 U. S., 532, 8 Supp. Ct., 1297, 32 L. Ed., 210; *Dibert* v. *D'Arcy,* 248 Mo., 617, 154 S. W., 1116. Why not then the benefit of the incident of the suretyship of a personal surety?

While it is true two notes may thus exist, the creditor can make only a single proof against the debtor and have but one satisfaction. Jones, Coll. Sec., sec. 588d. It is really in substantiation of this rule that the decisions in *International Trust Co.* v. *Union Cattle Co.,* supra, and *In re Waddell-Entz Co.,* supra, are directed. A reading of these cases will make plain that on principle they are not in opposition to the other line of authorities above quoted and cited.

The fact that the new note of $779.01 included other indebtednesses, or a new one along with that evidenced by the earlier note sued on, cannot work a difference in principal. That feature was treated of in *Cotton* v. *Atlas Nat. Bank,* 145 Mass., 49, 12 N. E., 850, 856, where it was said: "In regard to giving time on the $50,000 debt, the effect upon that debt and its security by renewing the note as part of a larger note was the same as if it had been renewed alone. . . . The amount of the debt can be ascertained, and the payments made properly applied, with as much certainty, and by the same computations, as if the new note had not been given." *Ripley* v. *Greenleaf,* supra.

In regard to the right of the sureties in or by reason of the proceeds of the mortgaged personalty: The creditor bank applied these as credits on the last note

secured by the mortgage. In so doing the sureties obtained *pro tanto* satisfaction, which was the true and just measure of their rights. This second note represented in part the indebtedness on which they were sureties, and when there was a realization on the personalty conveyed to secure the large note in all its constituent parts, and the proceeds were thus credited thereon, the sureties cannot complain.

We have not for consideration the doctrine of application by a court of law of payments, since here the bank as creditor has itself made the appropriation. *Bussey* v. *Grant,* 10 Humph., 238; *Mason* v. *Smith,* 11 Lea, 67, 74; 30 Cyc., 1240.

The court of civil appeals, in modifying the judgment of the trial court so as to adjudge *pro tanto* satisfaction, did not err; affirmed.