IN RE ESTATE OF GEORGE HOAGLAND.
LESHARA STATE BANK, APPELLEE, V. HAZEL HOAGLAND, EXECUTRIX, APPELLANT.

FILED JANUARY 16, 1935. No. 29074.

*Robins & Yost,* for appellant.

*J. H. Barry, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and DAY, JJ., and ELDRED, District Judge.

EBERLY, J.

This is, in substance, an action at law upon a promissory note in the following form:

"$2,750.   Leshara, Nebraska, June 12th, 1930.

"On demand, after date, we, or either of us, promise to pay to the order of the Leshara State Bank, Leshara, Nebraska, twenty-seven hundred fifty dollars.   For value received, negotiable and payable at the Leshara State Bank, Leshara, Nebraska, with interest," etc.   (Signed) "J. R. Magley, Mrs. J. R. Magley, Geo. Hoagland."

George Hoagland died and a claim in usual form, based upon this note, was filed in the matter of deceased's estate in the county court of Saunders county.

To the allowance of this claim the executrix of this estate presented objections, in writing, which, so far as essential to an understanding of the controlling issues, may be summarized as follows: "3. If any liability (of George Hoagland was created by this note), same is as surety and secondary to liability of Joe and Mae Magley. 4. Said note has been extended from time to time without the knowledge or consent of George Hoagland and he was released therefrom by reason thereof."

On a hearing on the claim it was disallowed by the county court. Claimant prosecuted an appeal to the district court for Saunders county where, upon a trial on the merits, judgment was entered for claimant.

The executrix of the George Hoagland estate prosecutes an appeal to this court, and presents two contentions for our consideration, viz.: (1) The district court erred in denying motions of the executrix for dismissal of the appeal because of alleged failure of claimant to seasonably execute and tender a proper appeal bond as required by law; and (2) that George Hoagland and his estate had been, as a matter of law, released by reason of extension of time by the payee of this note to J. R. Magley and Mrs. J. R. Magley.

In support of her first contention appellant insists that section 30-1603, Comp. St. 1929, is applicable and controlling. This section provides: "Every party so appealing shall give bond in such sum as the court shall direct, with two or more good and sufficient sureties, to be approved by the court, conditioned that the appellant will prosecute such appeal to effect without unnecessary delay, and pay all debts, damages and costs that may be adjudged against him."

Appellee contends that the determining statutes are sections 27-540 and 21-1302, Comp. St. 1929.

By section 27-540, it is provided: "In civil actions brought under the provisions of this chapter either party may appeal from the judgment of the county court, in the same manner as provided by law in cases tried and determined by justices of the peace. The amount of the bond or undertaking shall be double the amount of the judgment and costs, and shall be approved by the county judge."

Section 21-1302 provides: "The party appealing shall, within ten days from the rendition of judgment, enter into an undertaking to the adverse party, with at least one good and sufficient surety to be approved by such justice, in a sum not less than fifty dollars in any case, nor less

than double the amount of the judgment and costs, conditioned: First. That the appellant will prosecute his appeal to effect and without unnecessary delay; Second. That if judgment be adjudged against him on the appeal, he will satisfy such judgment and costs. Such undertaking need not be signed by the appellant."

The legislative history of these sections discloses the following: An act entitled "An act concerning the organization, powers and jurisdiction of probate courts" (passed, and took effect, March 3, 1873) covered the organization, general jurisdiction, exclusive probate jurisdiction, and general powers exercisable in probate jurisdiction, including, "First. To hear and determine claims and set-offs in the matter of estates of deceased persons." Section 4. By section 26 of this act it was provided: "In civil actions brought under the provisions of this chapter, either party may appeal from the judgment of the probate court, or prosecute a petition in error, in the same manner as provided by law in cases tried and determined by justices of the peace. · The amount of the bond or undertaking taken shall be double the amount of the judgment and costs, and shall be approved by the probate judge." Gen. St. 1873, p. 263. The terms of this enactment, with certain amendments immaterial so far as the question under consideration is concerned, have been continued in force and effect, and now appear as sections 27-501, 27-502, 27-503, 27-504, and 27-540, Comp. St. 1929.

The reference contained in section 27-540 to "in the same manner as provided by law in cases tried and determined by justices of the peace" refers to section 21-1302. This section was enacted as section 1007 of our Civil Code, adopted in 1866. And by section 17, art. V of the Constitution of 1875, it was provided: "Appeals to the district court from the judgments of county courts shall be allowed in all criminal cases, on application of the defendant; and in all civil cases, on application of either party, and in such other cases as may be provided by law."

However, in 1881, chapter 47 of the laws of that year was adopted, bearing as a title, "An act providing for an appeal from the decision of the county court in certain matters." This purports to be an independent act and contains no repealing clause, and in terms in no manner refers to any laws previously enacted. Section 3 of this act now appears as section 30-1603, Comp. St. 1929, as hereinbefore quoted.

The claim in suit was disallowed by the county court on April 21, 1933, and on April 29, 1933, an appeal bond was filed by plaintiff bank in the county court in this cause conforming in terms to the requirements of section 21-1302, Comp. St. 1929. On the same day the "bond and surety thereon" were approved by the county judge. On May 6, 1933, a transcript of proceedings, certified to by the county judge as of May 2, 1933, was duly filed in the office of the clerk of the district court for Saunders county. On June 2, 1933, the executrix of the Hoagland estate, appearing generally in the district court, presented a motion for an order dismissing the appeal because of failure to have two sureties sign the appeal bond, and because two sureties failed to execute and indorse upon such bond their juistification as required by section 20-2223, Comp. St. 1929.

On June 22, 1933, the district court overruled this motion to dismiss. On June 30, 1933, the executrix filed "objections to claim of Leshara State Bank." On October 4, 1933, the issues were tried to the court "on the pleadings and the evidence, and the cause submitted on briefs."

On October 25, 1933, a motion was presented to the court on behalf of the bank "for permission to amend the appeal bond heretofore filed herein, by adding an additional surety thereon instanter." On the same day a decree was entered by the trial court permitting claimant "to amend the said appeal bond filed herein, by adding the name of an additional surety thereon, and also permitting it to amend the transcript filed herein showing such amendment to such bond." The court also, as part of the

same decree, entered a finding and judgment for claimant, as prayed.

The record also indicates that an additional surety signed the appeal bond on October 25, 1933, and the two sureties, together, on the same day, executed the affidavit of justification in compliance with sections 20-2223, 20-2224, Comp. St. 1929. The bond so amended was subsequently refiled in the county court and transmitted to the district court.

The executrix on October 28, 1933, filed objections in writing to the permission to amend; also filed a motion for a new trial, and a "Motion to Set Aside Judgment and Supplemental Motion to Dismiss Appeal from Disallowance of Leshara State Bank Claim," all of which were overruled by the trial court.

While the district court sustained the bond as originally given, subsequently, on application of appellant, it permitted amendments to the original bond so that as amended it substantially conformed to the requirements of section 30-1603, Comp. St. 1929.

Ultimately, the sole question here is the power of the trial court to permit or approve the amendments as and when actually made.

In *Casey v. Peebles,* 13 Neb. 7, substantially identical with the instant case, the rule is announced: "Where the statute requires two sureties upon a bond for an appeal, and a bond containing but one is duly approved, it is not void, but may be amended. And it will be sufficient, unless objected to on the ground that it is signed by but one surety." See, also, *Bazzo v. Wallace,* 16 Neb. 293; *In re Estate of Hoferer,* 116 Neb. 254.

While appellant impliedly concedes that the amendments here made were within the power of the trial court, she insists that, in view of the facts in the record, the applicable rule is: "Time for amendment is limited to reasonable time after objection is made, and *where not fixed by statute,* rule of court or otherwise, the time is never permitted to extend beyond hearing on the objection to

sufficiency of bond." (Italics ours.) In Nebraska our statute fixes the "time for amendment."

Section 20-852, Comp. St. 1929, provides: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect. * * * And whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment."

Section 20-853 provides: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

These two sections (20-852 and 20-853) were considered by this court in *O'Dea v. Washington County*, 3 Neb. 118, and the following language of Mr. Justice Swan in *Irwin v. Bank of Bellefontaine*, 6 Ohio St. 81, was approved as applied thereto, viz.: "Is the filing of an appeal bond a proceeding? The word is generally applicable to any step taken by a suitor to obtain the interposition or action of a court. Steps taken, by which the judgment of a court is vacated, and the cause taken to, and the appearance of the parties effected in another tribunal, is a proceeding, and a very important one, in the progress of a civil action. It is as clearly a proceeding by which the suitor takes steps to prosecute his action, or defense, in an appellate court, as is the suing out of process at the commencement of an action, or the filing of a petition in error with process served. Besides, the term proceeding is used in the section of the Code referred to, to distinguish all other steps taken in an action from those embraced in the word pleading."

In this *O'Dea* case the following rule was announced by this court: "Steps taken by filing an appeal bond to obtain

a review of an award made by appraisers, of damages on account of the laying out of a public highway, is a *proceeding* in an action, and clearly within the statutory meaning of that term; and if such bond be found to be defective it may be amended in the appellate court, by consent of sureties, or a new bond may be filed."

The action of the trial court in permitting and approving the amendments to the appeal bond is approved as being not only within the spirit, but as required by the express wording, of the statute quoted.

Appellant, to establish her claim that the Hoagland estate had been released by reason of extension of time, called as her witness the president and cashier of the Leshara State Bank, who testified that none of the moneys which constituted the original consideration of the note in suit was paid to George Hoagland by the bank; that on three occasions subsequent to the delivery of the note in suit new notes of the same amount were executed by J. R. Magley or J. R. Magley and Mrs. J. R. Magley, his wife, and delivered to the bank "for collateral" to the note here in suit. Two of the notes so executed appear in evidence, and each bears the notation, in pencil, "collateral to old note." Each of these three notes had written on their face the date of execution, and by their terms were payable "on demand after date." It also appears in evidence that the rules of the state banking department required all demand notes to be renewed "within six months." Two pages of the liability ledger of the bank were also introduced in evidence, and opposite two entries thereon (one of which is an entry relating to the note in suit) the word "renewed" appears to have been interlined. This evidence that the renewal notes were taken as collateral to the note in suit is not disputed in the record, and it is also a conceded fact that the note in suit was never canceled nor surrendered by the bank.

On these facts appellant contends that Hoagland is a party secondarily liable on this note, and that section 62-801 of our negotiable instruments law is inapplicable;

that the controlling enactments are sections 62-408, 62-1702, 62-206, and 62-802; that the part of section 62-802 providing "A person secondarily liable on the instrument is discharged: * * * Sixth. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable, or unless the right of recourse against such party is expressly reserved," sustains her defense.

In this connection the correctness of the doctrine of *Peter v. Finzer,* 116 Neb. 380, is challenged because, though in harmony with the determination of the majority of the jurisdictions which have considered the subject involved therein, it is inconsistent with the well-established rules of suretyship. It may be said in passing that the subject involved in that case was the proper construction of our negotiable instruments act, an enactment having for its avowed purpose the obtaining of uniformity in the law of negotiable instruments throughout the nation. In view of the end sought by the legislation under consideration, this court, as now constituted, is unanimous in the view that the so-called "majority rule" should be followed, and therefore the doctrine announced in *Peter v. Finzer, supra,* is reaffirmed.

But the serious question presented by the record is whether the facts established by the evidence invoke the application of the statute on which appellant relies.

It is quite obvious that the terms of the contracts involved in this litigation must be determined by the face of the promissory notes, wholly unmodified, as a matter of law, by any rule of administration which may have been prescribed by the state banking department on the subject of demand notes. Neither can the word "renewed" as interlined on the liability ledger affect the conclusion to be reached.

In discussing a similar point the supreme court of New York, appellate division, in *National Park Bank v. Koehler,* 122 N. Y. Supp. 490, said: "Plainly, the note was not paid.

The bookkeeping entries made by the plaintiff for convenience are of little significance."

From a careful consideration of the authorities we are convinced that, "both under the negotiable instruments law and independent thereof, there is no extension of a bill or note, so as to postpone suit or so as to discharge indorsers, where another bill or note, either of the maker or of a third person, is taken merely as collateral or additional security, and there is no agreement postponing the remedy, although indulgence may in fact be granted; * * * Taking as additional security for a matured note a new note payable on demand is not an extension." 8 C. J. 432.

It also appears to be the true rule that the fact that the new note was payable "on demand after date" in no manner alters the situation. In *Peninsular Savings Bank v. Hosie,* 112 Mich. 351 (after adoption of negotiable instruments act) this principle was announced:

"The acceptance by the holder of a past-due promissory note of a new note for the amount of the old, with interest, payable 'on demand after date,' with interest, is not such an extension of time as will release an indorser of the old note, since the new note is due and suable immediately."

In the opinion of the Michigan court in this *Hosie* case, the following appears (pages 354, 355) :

"It is claimed that the giving of the note of April 21, 1893, 'payable on demand after date, with interest,' gave one day's time to the motor company upon the notes sued upon, and, because of the extension of time, released Mr. Jones. The counsel for the estate have made an able argument in support of their contention, and have cited a number of authorities. We understand the rule to be: 'The statute of limitations begins to run from the very day the right of action accrues. Thus, upon a note payable so many days from the date, it begins to run from the day of payment, and not from the day of date; but the day of maturity is excluded in the computation of time.

If payable at sight, the statute runs from sight. If so many days after sight, or after certain events, then from the time named after sight, or after the events have happened. If the instrument be payable on demand, the statute begins to run immediately. "On demand after date" is the same as "on demand." ' 2 Daniel, Negotiable Instruments, sec. 1215.

"In *O'Neil v. Magner,* 81 Cal. 631, it was held that a promissory note made payable on demand after date is an ordinary demand note, payable at once, on which an action can be brought immediately after it is given. To the same effect are *Turner v. Mining Co.,* 74 Wis. 355; *Hitchings v. Edmands,* 132 Mass. 338; *Fenno v. Gay,* 146 Mass. 118. We cannot agree with counsel that the giving of this note was such an extension of time as to discharge Mr. Jones from liability."

It is to be noted that while the quotation from Daniel on Negotiable Instruments above referred to is from the 5th edition, in the 7th edition of the same work, published in 1933, the text, "If the instrument be payable on demand, the statute begins to run immediately. * * * 'On demand after date' is the same as 'on demand'" is retained unmodified. 3 Daniel, Negotiable Instruments (7th ed.) 1426. See, also, *Dies v. Wilson County Bank,* 129 Tenn. 89; *Federal Trust Co. v. Central Trust Co.,* 244 Mass. 204; *Second Nat. Bank v. Graham,* 246 Pa. St. 256; *Williams v. Guaranty State Bank & Trust Co.,* 264 S. W. (Tex. Civ. App.) 194.

It is obvious that, even if appellant be considered as the person secondarily liable on the instrument in suit before us, no defense thereto has been established by the evidence in the record.

The judgment of the district court is, therefore, correct in its final disposition of the case, and it is

AFFIRMED.